GULF LIVE STOCK INS. CO. v. LOVE et al. (No. 11.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 4, 1915. Rehearing Denied Dec. 2, 1915.)

1. BILLS AND NOTES ⬅226—INDORSEMENT AS SURETY—CONSIDERATION.

Where a surety on a bond of an insurance agent conditioned that the surety would repay to the insurance company any premiums due it from the agent on termination of the contract between the agent and the company became a surety on notes of the agent for the sums then due the company, there was such a consideration for the new contract of suretyship that it was

valid, since it operated as an extension of time of payment of sums already due.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 534–541; Dec. Dig. ☜226.]

2. PLEADING ☜412—REPLY—WAIVER OF OBJECTIONS TO WANT OF.

In an action on a contract of suretyship, where the defendant surety alleged fraud in securing his signature, to which the plaintiff failed to reply, it was the duty of the surety to ask for judgment upon the pleadings or to object to the introduction of evidence upon the question of fraud, and, where the surety proceeded to trial as if issue had been duly joined, he waived his right to avail himself at a later time of the defect in the pleadings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1387–1394; Dec. Dig. ☜412.]

3. BILLS AND NOTES ☜477 — ACTIONS — FRAUD—GOOD FAITH—PLEADING.

Where defendant alleged that his signature was secured as surety on certain notes by fraud, it being represented to him that certain others would sign as sureties with him, and they did not so sign, that allegation was no defense to an action on the notes in the absence of a further allegation that plaintiff had notice of the fraud.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1524, 1525, 1558; Dec. Dig. ☜477.]

Appeal from District Court, Orange County; A. E. Davis, Judge.

Action by the Gulf Live Stock Insurance Company against J. J. Love and another, in which the defendant J. T. Stark impleaded M. A. Watson and C. E. Slade. From a judgment for plaintiff against defendant Love and for defendants Stark, Watson, and C. E. Slade, the plaintiff appeals. Reversed, and judgment rendered as to defendant Stark, and cause remanded for new trial on the question of contribution between defendants Stark, Slade, and Watson.

Bisland, Adams & Bruce, of Orange, for appellant. Holland & Holland, of Orange, for appellees.

CONLEY, C. J. This is a suit by appellant insurance company against J. J. Love and J. T. Stark on nine promissory notes dated April 2, 1912, eight of said notes being for the sum of $200 each, and the ninth for $154.35. Each note is payable to the Gulf Live Stock Insurance Company at Orange, Tex., with 10 per cent. per annum interest thereon from date, and providing for the usual 10 per cent. attorney's fee. The first one of said notes is payable on June 15, 1912, and the other eight are due and payable respectively on the 15th day of each succeeding month after June 15, 1912. Plaintiff, appellant here, filed suit on all of the notes, on April 19, 1913. The defendants J. J. Love and J. T. Stark filed answers June 4, 1913, setting up the following defenses:

The defendant Love, in substance, pleaded that during the years 1911 and 1912 the plaintiff company was doing a live stock in-surance business, that is, it was issuing policies of insurance upon horses, mules, and other live stock, insuring the owners of same against loss of said animals by death, and was collecting premiums for said policies; that he (the defendant Love) was the general agent or general manager of said company, whose duty it was to appoint subagents in the different counties in the state, which subagents, together with this defendant, secured applications for insurance upon the live stock of different parties, and the premiums for said policies were paid to the agent securing the insurance, a commission for which was retained by the agent and by the general agent, and the balance of the premiums was turned over to the plaintiff company; that there was to be a monthly accounting between the plaintiff company and the defendant Love of the amounts of premiums collected by him and his subagents for the preceding month, and that the said agents had until the 15th day of the succeeding month in which to pay the amounts collected and to make said report; that defendant Love, as the general agent, was required to and did give a bond to the plaintiff to secure the plaintiff in the payment of premiums so collected, which premiums were by the subagents returned to the defendant Love and accounted for to him, and he (defendant Love) in turn accounted for the same to plaintiff company, and the bond was given to secure said premiums collected by the defendant Love as general agent; that some time during the year 1912, about May 15th, the plaintiff company removed the defendant Love from his said office, and appointed another general agent in his stead, and required the defendant Love to execute the notes herein sued on, in the total sum of $1,954.35, which the plaintiff company then estimated to be the amount of the defendant Love's indebtedness to the plaintiff company upon the bond, as general agent, that is to say, that the same represented the amount of premiums upon policies outstanding written by the subagents of the defendant Love, and which had not been turned in; that it was agreed between plaintiff company and the defendant Love that said premiums, when collected, were to be turned over to the treasurer of the plaintiff company, and defendant's liability upon the above mentioned bond was thereby to be extinguished and canceled, and the said notes herein sued on were then to be returned to the defendant Love and canceled; that soon after the new general manager or general agent was appointed, and acting for it, and with the acquiescence and knowledge of the plaintiff company, said new agent represented to each and all of the subagents of the defendant that the defendant Love was no longer the agent of the plaintiff company, but that the agent had been appointed, and that the

amounts so due on all outstanding premiums were not to be paid to the defendant Love, which representations were made in writing, and that the defendant, on this account, was prevented from collecting the sums then due by such subagents, except that the subagents or some of them did pay to the defendant $200 of said amount, which the defendant Love paid to the plaintiff company, and which should have been applied upon the indebtedness of the defendant Love to the plaintiff company; that the defendant Love also secured a note for $100 from a subagent in Harris county, which was turned over to plaintiff company and accepted by it as a credit upon the indebtedness of the defendant Love, and that he also secured several notes of Ad Van Kalckstein, in the sum aggregating $50, which he turned over to the company, and which was accepted by it as a credit upon the indebtedness; that soon after giving by the defendant Love of the notes herein sued on to the plaintiff company the stockholders of the plaintiff company sold out the entire capital stock of said company to John C. Tracey, and transferred the entire assets of the company to him; that he (George C. Foreman), the new agent, began winding up the affairs of the company and began canceling the insurance policies which the defendant Love had secured for the company, and which cancellation required the return of the premiums by the insurance company to be insured; and that the plaintiff company canceled all of the policies so written by the defendant Love and returned the premiums on the policies then outstanding to the parties insuring their live stock, and this defendant claimed that by reason of the cancellation of such policies and the return of the premiums the consideration for said notes wholly failed. The defendant claims as a credit in the event he was held liable on said notes the amounts hereinbefore set forth, to wit, the total sum of $350. He also further alleged in his answer that he was required to execute a bond to the plaintiff for the proper conduct of his business as general agent and as security for the collection of the premiums on the live stock insurance policies, and that upon said policy the defendant J. T. Stark, together with C. E. Slade and M. A. Watson, were sureties; that at the time a new agent was appointed in defendant's place and stead to conduct the business of the plaintiff company there was outstanding in the hands of various subagents over the state certain sums of money estimated by the plaintiff and the defendant Love to be about the sum of the notes executed by the defendant Love to plaintiff, and they further represented to the defendant Love that, if he would make the notes which are sued on herein, such notes would never be held as a charge against him, but would be canceled and returned to defendant as soon as the matter of collecting the premiums had been straightened up

with the defendant and the subagents of this defendant; and that, in view of the representations made to him and in order to adjust the matter of the bond, he executed the nine notes sued on, the first eight of which were for the sum of $200 each, and the last for the sum of $154.35. The defendant alleged further that the notes were never to become a claim or obligation, but were simply to be held until the premiums or such part of them as could be collected were collected, and that the said notes were never to take the place of said bond, but that the bond should be and remain the obligation of the company, and was and is the contract between the plaintiff and the defendant Love, and that, if there is any liability from the defendant Love to the plaintiff, which he denied, the same is upon the bond, and not upon the notes. He prayed that he go hence without day and recover his costs.

The defendant Stark, in addition to alleging, in substance, what appears in the defendant Love's answer, also set up that he was an accommodation indorser on the notes sued on for Love; that he received no consideration for the indorsement and none of the proceeds of any of the notes, and no benefits therefrom, and that at the time of the execution of said notes, as set out in plaintiff's petition, the defendant Stark was induced to indorse the same, with the distinct understanding that M. A. Watson and C. E. Slade would become indorsers with him upon the notes, and that, unless the indorsement of C. E. Slade and M. A. Watson was had upon the notes, the defendant Stark was not to be held as an indorser of same, and that he (defendant Stark) would not have indorsed the notes except with this distinct understanding, and that he did indorse them with the understanding that the same were not to be delivered to the Gulf Live Stock Insurance Company, and were not to become an obligation against him unless C. E. Slade and M. A. Watson became indorsers thereon with him, and that the conditions of his indorsement were not complied with, and that as to him the notes should not have been delivered, and were not delivered to the Gulf Live Stock Insurance Company, and never became an obligation against this defendant; that he signed the original bond, as set out in defendant Love's answer, as a surety with C. E. Slade and M. A. Watson; that the defendant Love, in view of the representations made to him by the plaintiff insurance company, and in order to amicably adjust the matter of the bond, executed the nine notes sued on, with himself as indorser; that the notes were never to take the place of the bond, but that the bond should be and remain an obligation to the company; and that it still is the contract between plaintiff company and defendant Love and the defendant Stark, if there is any liability from either of them to the plaintiff company, which he denies. The defendant Stark impleaded M.

A. Watson and C. E. Slade, and prayed that, in the event judgment should be recovered against him by the insurance company, he have judgment over against the defendant J. J. Love for a like amount, and that he have judgment against C. E. Slade and M. A. Watson as joint sureties with him on the bond.

The case was tried in the district court without the intervention of a jury, resulting in a verdict in favor of appellant insurance company against J. J. Love for the sum of $2,439.03, and that the defendants J. T. Stark, C. E. Slade, and M. A. Watson go hence without day and recover their costs of suit. The trial court filed his findings of fact and conclusions of law. There is also a statement of facts in the record. The court's findings of fact and conclusions of law are as follows:

"Findings of Fact and Conclusions of Law.

"In the above cause I find the following findings of fact and conclusions of law, to wit:

"First. Prior to the execution of the notes sued on J. J. Love, as principal, and John T. Stark, C. E. Slade, and M. A. Watson, as sureties, had executed and delivered to the plaintiff company some character of bond, which, by inference only, was intended as an indemnity bond, and which bond was delivered and put in the possession of the plaintiff company.

"Second. Prior to the execution of the notes sued on the plaintiff company and defendant J. J. Love ascertained by agreement that the amount due and owing by the defendant J. J. Love to the plaintiff company was the sum of $1,954.35, and only by inference that the bond which had previously been executed was to indemnify plaintiff for any amount that defendant Love might owe plaintiff, and the plaintiff company demanded of defendant Love payment of this amount, and agreed with defendant Love that this amount agreed upon could be settled by notes of the defendant Love indorsed satisfactorily to plaintiff company.

"Third. Immediately before the execution of the notes sued on the defendant Love approached the defendant John T. Stark and told him that the plaintiff company desired notes instead of the bond, and asked him to sign same, and stated that he would obtain the signatures thereto of M. A. Watson and C. E. Slade, both of whom were financially responsible residents of Orange county, Tex., and that he would not deliver said notes in lieu of said bond until he had obtained the signatures of the said M. A. Watson and C. E. Slade, and all of which was agreed to by and between the defendant J. J. Love and the defendant John T. Stark, and which agreement was not known by the plaintiff company until after this suit was filed, and the defendant John T. Stark did not know until about the time this suit was filed that M. A. Watson and C. E. Slade were not indorsers or sureties on the notes sued on, and that the said J. J. Love had violated his agreement with him, the said John T. Stark, in failing to secure as sureties or indorsers with him the said M. A. Watson and C. E. Slade.

"Fourth. After obtaining the signature of the said John T. Stark on said notes, and in disregard to his agreement and statement, and without the knowledge or consent of the defendant John T. Stark, the said J. J. Love delivered said notes herein sued on to the plaintiff company.

"Fifth. The defendant John T. Stark received no consideration for the signing of said note, and never knew of their being delivered to the

181 S.W.—49

plaintiff company until some time about the filing of this suit.

"Sixth. The defendant Love on said agreement above set out procured the defendant Stark to indorse nine notes for the sum of $200 each, and one note for the sum of $154.35, being the notes herein sued on, except the first one of said notes, the same being for $200, and which first note was paid at maturity by the defendant Love.

"Seventh. The ten notes above set out were delivered by the defendant J. J. Love to the plaintiff company, and were by the plaintiff company accepted in lieu of and in satisfaction of said bond, and the bond was delivered at the time of the acceptance of said notes by the plaintiff to the defendant J. J. Love.

"Eighth. The plaintiff company at no time up to the trial of this case knew of the agreement entered into by the defendant J. J. Love and the defendant John T. Stark that the defendant J. J. Love was not to use nor deliver said notes signed by the said John T. Stark unless he secured also as indorsers on said notes M. A. Watson and C. E. Slade, and therefore did not know of said agreement between the said Love and Stark at the time it accepted said notes in lieu of said bond and surrendered said bond to the defendant J. J. Love.

"Ninth. At the time of the acceptance of said notes by the plaintiff company the plaintiff company and the defendant J. J. Love had agreed in a settlement that the defendant J. J. Love owed the plaintiff company the sum of $1,954.35, and by inference only that said bond was liable for said amount, and the notes taken were due and payable, one each month thereafter.

"Tenth. That M. A. Watson and C. E. Slade were made parties defendant herein by the defendant John T. Stark, and judgment was rendered in their favor, that they go hence without day, and that they recover all costs in this behalf expended.

"Eleventh. That the notes herein sued on, the principal sum of which aggregated $1,954.-35 have never been paid in whole or in part.

"Conclusions of Law.

"Under the above facts, I am of the opinion that the defendant John T. Stark is not liable to the plaintiff, but that the defendant J. J. Love is liable. I further find that the defendants M. A. Watson and C. E. Slade are not liable to either plaintiff or the defendant John T. Stark. I therefore render judgment for the plaintiff against the defendant, J. J. Love alone for the amount of the notes sued on, attorney's fees, and costs of court, and render judgment in favor of the defendants John T. Stark, M. A. Watson, and C. E. Slade, that they go hence without day and recover their costs."

Under the second assignment of error the appellant attacks the findings of the court to the effect that Stark received no consideration for indorsing the notes sued on.

The original petition in this case sets forth a suit by plaintiff against Love and Stark upon promissory notes, fully setting them out and describing them.

The defendant Stark, among other things, pleaded as follows:

"And for further and special answer herein the defendant says that some time during the years 1911 and 1912, the date of which this defendant is not certain, the said defendant J. J. Love was appointed and became the general agent of plaintiff, Gulf Live Stock Insurance Company, for the purpose of securing subagents over the state of Texas and conducting a live stock insurance business, and that, as such agent, the said defendant J. J. Love was required to execute a bond payable to the plaintiff

for the proper conduct of said business as general agent and for the security of the plaintiff in the collection of premiums on the live stock insurance written, and that the said Love executed the said bond payable to the plaintiff, and had as a surety on the bond the said defendant J. T. Stark, together with C. E. Slade and M. A. Watson, and that the defendant Love conducted the said business from time to time until a new agent was appointed for the said company, some time during the year 1912, the date of which is well known to the plaintiff, but not known to the defendant and that upon the said Gulf Live Stock Insurance Company relieving said J. J. Love as agent and manager, and appointing the said George C. Foreman in his stead to conduct the business of said company, there was outstanding in the hands of various agents over the state certain sums of money, estimated to be about the sum of the notes, executed by the defendant J. J. Love to the plaintiff, which said notes are herein sued on."

"And that the said defendant J. J. Love was after the severance of his connection with the said company, and about the 15th day of May, 1912, organizing a live stock insurance company and expecting to take charge thereof as general agent, and that the plaintiff, acting through its agents officers and stockholders, represented to defendant Love that unless he satisfied them with notes to cover the amount estimated to be due by the said agents, they would interfere with his business and prevent his securing the position of general agent with this Central Texas Live Stock Insurance Company, which he was organizing, and with which he was negotiating for a position as general agent. And the said defendant Love, in view of said representations made to him, and in order to amicably adjust the matter of said bond, executed the said nine notes herein sued on, the first eight of which was for the sum of $200 each, and the last for the sum of $154.35."

The following undisputed evidence occurs in the statement of facts:

The defendant Stark testified as follows:

"Well, I had been on the bond for Mr. Love, and he came to me and told me that it was payable, and that they had told him that, instead of the bond, they would rather have it in the shape of notes. He said that the holders of the bond preferred the notes in place of the bond, and that the other men on the bond had agreed to sign the notes if I did. * * * So I signed the notes with that understanding, that Mr. Watson and Mr. Slade would sign them with me. I was on the bond to secure J. J. Love's indebtedness to the Gulf Live Stock Insurance Company at that time. He was the agent of the company, and they put him under the bonds for the securing of the funds of the company intrusted to his hands. As to whether at that time he had a big indebtedness owing to the company, I don't know. He had to give them that bond. As the agent of the company, he was engaged by them to secure business for the Gulf Live Stock Insurance Company. I had been on that bond some time with M. A. Watson and C. E. Slade, something like a year or so before they came to me to pay the notes. I had been on the bond for a year or more when he came to me and said that the Gulf Live Stock Insurance Company preferred the notes in preference to the bond that had been executed. He told me, as I was going out of the city, that he would get me to sign the notes, with the understanding that he would get Watson and Slade to sign them afterwards; that they had already agreed to sign the notes. These notes are not indorsed nor signed by them in accordance with the agreement on his part. I would not have indorsed these notes if it had not been for that promise that these other men would sign if I did. Yes, sir; that promise was relied upon by me at the time I signed these notes. I understood that

these notes were not to be passed to the Gulf Live Stock Insurance Company or delivered to them unless these other persons signed them; that was the understanding. It must have been five or six months after the notes became due that I found out that the notes had been turned in without the signatures of M. A. Watson and C. E. Slade. * * * Nothing at all was received by me as a consideration for signing them; I was just helping the other fellow out. I never authorized Mr. Love or any one else to deliver to the Gulf Live Stock Insurance Company these notes without the signature of Mr. Love and Mr. Watson."

The testimony of G. M. Sells, witness for the plaintiff, is as follows:

"I was treasurer of the company [plaintiff] at the time Mr. J. J. Love gave the Gulf Live Stock Insurance Company these notes sued on. These notes were for the final settlement of the account of Mr. Love as general agent of the company. Mr. Love was not the general agent at the time. Nothing was said to me by Mr. Stark with reference to his indorsement at that time as to how the transaction was completed. My recollection is that Mr. Love was out as general agent some time in January, 1912. Up to April 2, 1912 [date of the notes], he had not settled with the company his indebtedness, so he made that settlement with notes indorsed by John T. Stark, which the company accepted in settlement of his indebtedness to the company. * * * The secretary of the company and Mr. Love determined the indebtedness to be the amount of the notes. Mr. Love and Mr. Hustmeyer agreed on that, and then Mr. Love and myself agreed to the correctness of the amount. * * * The company took these notes in settlement of the bond."

In the seventh paragraph of the court's findings of fact the court finds:

"That the ten notes above set out (nine of which are sued on in this cause) were delivered by the defendant J. J. Love to the plaintiff company, and were by the plaintiff company accepted in lieu of and in satisfaction of the bond, and the bond was delivered at the time of the acceptance of said notes by the plaintiff J. J. Love."

In the second paragraph of the findings of fact and conclusions of law the court finds, in substance, that the sum of $1,954.35, was due and owing by the defendant Love to the insurance company prior to the execution of the notes, and that an agreement was entered into between the defendant Love and the insurance company that the amount could be settled by notes of the defendant Love indorsed satisfactorily to the company.

In the ninth finding of fact the court finds:

"That the plaintiff at no time up to the trial of this cause knew of the agreement entered into between the defendant J. J. Love and the defendant John T. Stark that the defendant J. J. Love was not to use or deliver the notes signed by the said Stark unless he secured also as indorsers on said notes M. A. Watson and C. E. Slade, and therefore did not know of said agreement between said Love and Stark at the time it accepted said notes in lieu of said bond and surrendered said bond to the defendant J. J. Love."

From the above references these facts are undisputed:

(a) That the defendant Love was an agent of the plaintiff company, and, as such agent, he was collecting funds belonging to the plaintiff insurance company, and that the company had put him under a bond to secure

the faithful performance of his duties in the handling of such funds, and that upon this bond the defendants John T. Stark and C. E. Slate and M. W. Watson were sureties.

(b) That prior to and at the time of the execution of the notes sued on in this case there was a liability under the bond in the sum of $1,954.35 by reason of the failure of the agent Love to account to the plaintiff company for that amount of money, which amount the said defendant Love admitted was the correct amount.

(c) That prior to and at the time of the execution of said notes that amount was due and owing under the bond, for which Love and his three sureties were liable.

(d) That the notes were accepted by the plaintiff in satisfaction of the liability under the bond surrendered to the defendant Love, and the time of payment of such liability extended to the several dates of the maturity of the notes.

[1] Now, in reaching the ultimate conclusion that the defendant Stark was not liable on said notes, did the trial court err in finding that the defendant Stark received no consideration for signing the notes? In this state, at least, the rule of law is established that the extension of the time of payment of a past-due indebtedness will support a consideration in a contract of suretyship; that one who becomes a surety or indorser under such circumstances, as set forth in the facts of the instant case, at the time of the renewal of a note, or when an extension of time for its payment is given, in consideration of such renewal or extension of the time, will be bound. The contract renewing and extending the time is sufficient to support the obligation of the surety or indorser to pay the note agreed upon. This principle is so well established that we do not deem it necessary to do more then cite a few of the authorities on the subject. Hannay v. Moody, 31 Tex. Civ. App. 88, 71 S. W. 325; Armstrong Cater Co. v. Snyder, 15 Tex. Civ. App. 394, 39 S. W. 379; People's Bank v. Fleming, 160 S. W. 648; Templeman v. Texas Brewing Co., 35 S. W. 935; Brandt on Suretyship & Guaranty, par. 25.

Appellees contend that there is nothing to show that the bond was of any value, and that so far as this record shows it may be a worthless piece of paper. Under appellee Stark's testimony, and under the other references hereinabove made, we fail to see the logic of this assertion. If, as appellee Stark testifies, the bond was to indemnify the insurance company for moneys in Love's hands, it must have been a binding obligation to that effect, and so understood and regarded by Stark, when he executed it, and if, under its terms, $1,954.35 was due upon it, and payable before and at the time of the execution of the notes, and the notes extended the time of payment of said amount, would both determine the bond to be a paper of value and that it was surrendered for a valuable consideration. We think, under the facts and circumstances of this case, that the defendant Stark received a valuable consideration for indorsing the notes, and the second assignment of error is well taken, and should be sustained.

[2] Under the first and fourth assignments of error the appellant attacks the action of the court in rendering judgment on the facts of the instant case for the defendant Stark. Before proceeding to consider these assignments, it will be well to notice here the contention of appellee under his first counter proposition to appellant's first assignment of error, in which he urges:

"Defendant Stark having alleged fraud in procuring the notes sued on, that they were not to be delivered until indorsed by M. A. Watson, and C. E. Slade, who were sureties with him on a bond to plaintiff, and that said notes were not to become an obligation until so indorsed, these facts constituted such a fraud as to void the notes, in the absence of plea by plaintiff that he was a purchaser for value without notice."

A close inspection of the defendant Stark's answer leads us to the conclusion that there was perhaps an indefinite effort made in such answer to charge notice upon the part of the plaintiff insurance company of the agreement between Stark and Love that the notes were not to be delivered to the plaintiff company until Slade and Watson had indorsed them, and that, unless this was done, he was not to be bound thereby. At any rate, this agreement as between Love and Stark is clearly set out in the pleadings. No responsive pleadings of any kind were filed by the plaintiff, and nowhere does it appear that it filed any pleadings setting out that it took the notes before maturity and without notice of such alleged agreement.

For the sake of argument only, we may concede that it was incumbent upon the defendant company, in view of the allegations of the answer of the defendant Stark, to have filed a supplemental petition alleging such facts. However, the record shows that in the trial of this cause the case proceeded as though issue had been joined on such matters, and evidence was received thereon without objection, and there is a direct finding by the court that the notes were taken by the plaintiff company at the date of their execution, without notice of any such agreement, and in satisfaction of the bond.

It was the duty of appellee, if he desired to avail himself of the failure of appellant to controvert any of the allegations of the answer, or to file responsive pleadings thereto setting up the plea of innocent purchaser for value without notice, to have asked the court for judgment upon the pleadings, or at least to have objected to the introduction of any evidence by the appellant company upon such matters. If appellee proceeded as if issue had been duly joined on these questions, he waived his right to now avail himself of any right based thereon. In the case of Railway

Co. v. Pennington, 166 S. W. 467, the court said:

"Failure to file any pleading which is necessary to form an issue, including a complaint, answer, or reply, or otherwise failing to join issue properly, or at all, upon any or all of the allegations appearing in the pleadings, is deemed waived by voluntarily proceeding to trial as though issue was properly joined. Likewise, where the parties have voluntarily tried the case as if certain matters were in issue, neither will be permitted afterwards to object that such matters were not properly put in issue by the pleadings."

For additional cases on this subject, see Shaw v. Thomson Bros. Lumber Co., 177 S. W. 574; Railway Co. v. Tomlinson, 169 S. W. 217; Hill Co. Cotton Oil Co. v. Gathings, 173 S. W. 598; Bybee et al. v. Austin et al., 180 S. W. 287, decided by this court on October 14, 1915, and which has not yet been reported.

[3] Proceeding now to the discussion of the above assignments of error: There is no controversy by either side as to the court's finding of fact that no notice of any kind of the agreement between defendants Stark and Love as to the matter of having C. E. Slade and M. A. Watson indorse the notes before delivery, and that unless this was done the defendant Stark would not be liable on said notes, if chargeable to the plaintiff company, when it took the notes in satisfaction of the bond. The evidence is clear and undisputed that the notes were delivered to the plaintiff company on or about the date of their execution, to wit, April 2, 1912, and that upon such delivery the plaintiff company, in accordance with its understanding and agreement with Love, surrendered the bond and accepted the notes in satisfaction of the claim under the bond. The notes were ordinary forms of promissory notes; and there was nothing in the notes that would in any way appraise the appellant company of any such agreement, or to put it upon notice of any such agreement, and, as heretofore held, there was ample consideration supporting Stark's execution of said notes.

The law in this state is equally well established that one who received a negotiable note in the ordinary course of business for a valuable consideration, executed by two or more, but with the understanding of the makers between themselves that the note would not be delivered to the payee unless the signature of a third party was to be procured, can enforce its collection against those who signed it, unaffected by any such understanding of which he had no notice. In the case of Davis v. Gray, 61 Tex. 506, the court said:

"The note made the foundation of this action is negotiable in form, bears no evidence on its face that it ever was expected to be signed by any other persons than P. R. Turner & Co. and J. S. Davis, the appellant, and if the averments of the answer are to be taken as true, was delivered by Turner & Co. to Gray, in the ordinary course of business, for a valuable consider-

ation. This being true, it must be held that any agreement between Turner & Co. and Davis to the effect that the notes should be canceled unless Illison and Kyle also signed it as sureties cannot defeat the right of the plaintiff to recover on the note, unless it be shown that he had notice of the agreement between Turner & Co. and Davis. The signing and delivery of the note by Davis to Turner enabled the latter to deliver it to Gray, who, in the absence of notice to the contrary, might rely upon the intention of all the parties whose signatures were on it to make with him the contract which the note evidenced." Hess v. Schaffner, 139 S. W. 1024; First Nat. Bk. v. Burns, 126 S. W. 34; Wharton v. Fidelity Ins. Co., 156 S. W. 539.

We think that the court erred in reaching the conclusion that the defendant Stark was not liable in this cause, and the first and fourth assignments of error are therefore sustained.

Under the view we have taken of this case, it is unnecessary for us to consider the other assignments of error, as they appear in appellant's brief.

The pleadings of C. E. Slade and M. A. Watson, if they filed any, are not contained in the record. The trial court, having found against the liability of the defendant Stark as a signer of the notes sued on, did not adjudicate the responsibility, if any exists, of M. A. Watson and C. E. Slade to contribute to the defendant Stark any sum he may expend in discharging the liability to the plaintiff company. In this state of the record, we are unable to determine what sort of a judgment if any, should be rendered against them, and in favor of the defendant Stark. For this reason it will be necessary to send that portion of this case back to the trial court for adjudication. This case will accordingly be reversed and rendered as to the defendant Stark on his liability as signer of the notes to the plaintiff company, and judgment will be rendered in favor of the plaintiff company against the defendant Stark, and said cause will be remanded for a new trial on the question of contribution between Stark and C. E. Slade and M. A. Watson; and it is so ordered.