BRITE et al. v. ATASCOSA COUNTY. *
(No. 6844.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 3, 1923. Rehearing Denied Jan. 31, 1923.)

1. Counties ⊂⊃208—Only statutory authority required for county to sue in its own name.

No other authority than the statutes is required to empower a county to prosecute in its own name.

2. Counties ⊂⊃194—County authorized to sue in its own name on county collector's bond for shortage in taxes; "instrument evidencing debt to county."

Vernon's Sayles' Ann. Civ. St. 1914, art. 1371, providing that any instrument evidencing a debt to a county shall vest in it all rights, interests, and actions which would be vested in an individual if made directly to him, and article 1372, clothing the county with authority to sue on such instruments in its own name, authorizes suit in the county's name on the county collector's bond for shortage in taxes.

3. Attorney and client ⊂⊃70—When county sues, presumption prevails that attorneys signing pleadings authorized to represent county.

When prosecuting a suit in its own name by attorneys, the county comes into court as any other litigant, and the presumption will prevail that the attorneys signing the pleadings are authorized to represent the county, and no attack can be made on such authority unless a motion under Vernon's Sayles' Ann. Civ. St. 1914, art. 335, is made in writing under oath stating that such suit was instituted against the defendant without authority on the part of plaintiff's attorney.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction March 21, 1923.

**4. Counties ⊙⇒208—County is body corporate and politic to institute suits and defend against those brought against it.**

As the Constitution recognizes counties as municipal corporations along with cities and towns, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1365, expressly makes each county a body corporate and politic, a county, as such, has power and authority to institute suits and defend against those brought against it.

**5. Evidence ⊙⇒83(4)—In absence of attack held presumption that commissioners' court authorized suit by county through attorneys prevails.**

In absence of any attack in statutory manner as to proper authorization of a suit by county, the presumption prevails that the commissioners' court authorized institution of the suit through attorneys whose names are subscribed to the pleadings.

**6. Counties ⊙⇒194—Collector's bond to Governor, though not following terms of statute, held valid and effectual under statute and also good at common law.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1371, providing that bonds "for the payment of any debt or duty or the performance of any matter or thing to the use of any county, shall be valid and effectual, to all intents and purposes to vest in said county all rights, interests and actions which would be vested in any individual, if any such contract had been made directly to him," a county collector's bond to cover county taxes alone, given to the Governor pursuant to article 7608, instead of to the county judge as required by article 7610, while not following the terms of the statute, is valid and effectual to vest in the county all rights, interests, and actions which the statutory bond would have vested in the county judge, and it would also be good at common law.

**7. Evidence ⊙⇒250—In suit against principal and sureties on joint obligation, admission of principal competent evidence against surety.**

The admission of a principal will not be admitted as against the sureties in a suit in which the sureties are being sued alone, but when the suit is against the principal and sureties on a joint obligation, the admissions of the principal, being competent evidence against him, is also competent against the sureties, and hence, where a county tax collector admitted to the county judge and others that there was a shortage in his accounts, such admission was properly allowed in an action on his bond.

**8. Evidence ⊙⇒121(1)—Admissions of principal made in course of business become part of res gestæ and competent against surety.**

When declarations or admissions of the principal are made in the course of the performance of the business for which the surety is bound, so as to become a part of the res gestæ, such admissions are evidence against the surety.

**9. Trial ⊙⇒255(4)—Sureties objecting to evidence admissible against principal should request that it be confined to him.**

Where evidence was admissible against a principal, in an action against the principal and the sureties on his bond, the sureties, if they object to its admission against them, should request the trial court to confine the evidence to their principal.

**10. Counties ⊙⇒194—Sureties on tax collector's bond held not released from liability because of erasure of name of another known when they acknowledged the bonds.**

Where the sureties knew that another's name as surety appeared in the body of a tax collector's bond, and that it was signed by the other on November 17, 1914, but knew also when, on November 30, 1914, they acknowledged the bond, that the other's name had been erased in both places, their acknowledgment indicated their willingness to be bound without being joined with him, and they were not released from liability because of the erasure which appeared thereon when the bond was presented to the commissioners' court for approval.

**11. Counties ⊙⇒194—Agreement of sureties on tax collector's bond not to be bound unless all remained liable held no defense, in absence of notice to county of such agreement.**

The fact that the sureties on a tax collector's bond had entered into an agreement among themselves that none would be bound unless all remained on the bond would not lessen their liability to the county unless knowledge of the agreement had been conveyed to the county before the bond was accepted.

**12. Counties ⊙⇒194—Erasure in county tax collector's bond held not notice to county that erasure of surety's name was made without consent of other sureties.**

When a county tax collector's bond was presented to the county, in the absence of any notice or knowledge to the contrary, the county had the right to assume that the erasure of a surety's name had been made with the knowledge and consent of the other sureties, and such erasure did not put the county upon notice that it had been made without the consent of the other sureties, and that it released them from liability.

**13. Judgment ⊙⇒310—Trial ⊙⇒340(1)—Court authorized to amend directed verdict against all defendants by inserting name of defendant erroneously omitted by stenographer.**

A directed verdict against all defendants may be amended by the judge on motion during the term to conform to the charge by inserting the name of a defendant erroneously omitted by the stenographer preparing the same, and the judgment may be amended to conform thereto.

**14. Trial ⊙⇒340(1)—Court authorized to correct directed verdict so as to properly describe a defendant.**

Where a directed verdict by mistake described a defendant as administratrix instead of executrix, the court was authorized and it was its duty to change the description to that of executrix, as the change could have been made in a verdict found on facts by the jury, and could not affect the validity of the verdict.

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Appeal and error ⬅︎173(2)—Sureties of tax collector not protesting until amended motion for new trial could not urge on appeal failure to foreclose lien on principal's property.**

Where in an action against sureties on the county tax collector's bond there was no evidence that a valid attachment lien was levied on any property belonging to the collector, or that he had any property, and defendants made no protest during the trial for failure to foreclose the lien until an amended motion for a new trial was made, they could not on appeal urge error to the failure to foreclose the lien.

**16. Counties ⬅︎194—Where issue in suit on the bond of tax collector was as to amount of money appropriated by him and not paid over, held unnecessary to show amount collected.**

Where the issue in an action against sureties on a county tax collector's bond involved the amount of the money appropriated by the collector, and not paid over to the county, it was not necessary to show how much money was collected by him.

Appeal from District Court, Atascosa County; Covey C. Thomas, Judge.

Action by Atascosa County against Tom Brite and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Frank H. Burmeister, of Jourdanton, and W. W. Walling and Carl & Swearingen, all of San Antonio, for appellants.

Earl D. Scott, of Jourdanton, and J. D. Dodson, of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee to recover against Tom Brite, as principal and W. H. Ash, Wright Williams, W. T. Brite, George M. Martin, G. L. Carver, M. L. Anderson, and J. N. Dixon, as sureties, on a certain official bond given by Brite, as tax collector of Atascosa county, for an alleged shortage in taxes collected by him during the years 1914 and 1915. Pending the suit George M. Martin died, and his wife, Mrs. Cornelia Martin, individually and as independent executrix of the estate of her husband, was made a party. W. H. Ash also died, and D. A. N. Duncan, administrator of his estate was also made a party. The court instructed a verdict for appellee in the sum of $10,552.

Tom Brite was the collector of taxes for Atascosa county in 1914 and 1915, and on November 17, 1914, gave a bond in the sum of $88,955.71 for the faithful performance of his duties as tax collector, with W. H. Ash, Wright Williams, George M. Martin, G. L. Carver, M. L. Anderson, J. N. Dixon, and W. T. Brite as sureties. The bond was made payable to the Governor of Texas and his successors in office. Tom Brite misappropriated certain of the taxes and defaulted in payment in a sum in excess of $8,000 out of the taxes collected by him in 1915. Brite admitted the shortage which had been ascertained by the commissioners' court of Atascosa county. The audit of Brite's books showed the shortage. He failed to pay the shortage to the county, and still owes it.

[1-5] The suit was brought in the name of appellee, under authority given by the statutes of the state, and no other authority was required to empower the county to prosecute the suit. In article 1371, Vernon's Sayles' Civil Statutes, it is provided that any instrument of whatever form evidencing a debt to a county, no matter who may be named as payee, shall vest in the county all rights, interests, and actions which would be vested in any individual if such contract had been made directly to him, and by article 1372 the county is clothed with the authority to sue on such instruments in its own name or in that of the person to whom they were made. When prosecuting a suit in its own name by attorneys, the county comes into court as any other litigant, and the presumption will prevail that the attorneys signing the pleadings are authorized to represent the county, and no attack can be made on such authority, unless a motion in writing under oath is made by the defendant "stating that such defendant believes that such suit or proceeding was instituted against him * * * without authority on the part of the plaintiff's attorney." Article 335. The statute (article 1365) expressly makes each county a body corporate and politic, and as such it undoubtedly had the power and authority to institute suits and defend against those brought against it. The Constitution of Texas recognizes counties as municipal corporations along with cities and towns. In the absence of any attack in the statutory manner of the proper authorization of the suit, the presumption will prevail that the commissioners' court authorized the institution of the suit through the attorneys whose names are subscribed to the pleadings. The cases cited by appellants have no bearing upon the case presented by the record. The first assignment of error is overruled.

[6] Articles 7608 and 7610, Vernon's Sayles' Civ. Stats., require bonds to be given by collectors of taxes for state taxes to the Governor and for county taxes to county judges, but the bond which forms the basis of his suit was given to the Governor of the state. However, it was shown to have been intended to cover the county taxes alone. It is provided in article 1371:

"All notes, bonds, bills, contracts, covenants, agreements or writings, made, or to be made, whereby any person is, or shall be, bound to any county, or to the court or commissioners of any county, or to any other person or persons, in whatever form, for the payment of any debt or duty or the performance of any matter or thing to the use of any county, shall be valid and effectual, to all intents and pur-

(247 S.W.)

poses, to vest in said county all rights, interests and actions which would be vested in any individual, if any such contract had been made directly to him."

That law, we think, was passed to protect the county and make its ignorance proof against the acts of those to whom the people have intrusted the management of county affairs. The bond sued on was shown to have been given to protect the county against the malfeasance or misfeasance of its tax collector, and it undoubtedly bound the collector and his sureties "for the payment of any debts or duty or the performance of any matter or thing to the use of the county," and, while not following the terms of the statute as to bonds, it is "valid and effectual to all intents and purposes to vest in said county all rights, interests, and actions" which the statutory bond would have vested in the county judge or Governor. The bond would also be good at common law.

[7, 8] Tom Brite admitted to the county judge and others that there was a shortage in his accounts of more than $8,000, and that admission was properly allowed by the court. The rule seems to prevail that the admission of a principal will not be admitted as against the sureties in a suit in which the sureties are being sued alone but it has been held that, when there is a suit against principal and sureties on a joint obligation, the admissions of the principal, being competent evidence against him, are also competent against his sureties. Brandt, Suretyship, §§ 795-797; Amherst Bank v. Root, 2 Metc. (Mass.) 522; Singer Co. v. Reynolds, 168 Mass. 588, 47 N. E. 438, 60 Am. St. Rep. 417; Swift v. Trustees, 189 Ill. 584, 60 N. E. 44. It is also the rule that, when declarations or admissions of a principal are made in the course of the performance of the business for which the surety is bound, so as to become a part of the res gestæ, such admissions are evidence against the surety. Brandt, Suretyship, § 798; Keowne v. Love, 65 Tex. 152; Barry v. Association, 67 Tex. 250, 3 S. W. 261.

[9] The admissions of Brite were undoubtedly competent as against him, and, if the sureties thought the testimony was inadmissible as to them, they should have requested that the evidence be confined to the principal. Keowne v. Love, 65 Tex. 152; Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612; Johnson v. Frost (Tex. Civ. App.) 229 S. W. 558.

[10] When the bond was shown to the county clerk, it had the name of A. A. Ash, one of the sureties, erased, and the notary public who delivered the bond to the clerk called his attention to the erasure. The evidence showed that the name had been erased when it was acknowledged by the sureties, and that it was erased when it was presented to the commissioners' court for approval. All of the sureties admitted signing the bond, but claim that they were released from liability because the name of A. A. Ash was erased. They do not claim that they were ignorant of the erasure when they acknowledged the bond, and no effort was made to show that the erasure was made after the bond had passed into the custody of the commissioners' court. On the other hand, the evidence showed affirmatively that the erasure took place before the bond was delivered to the clerk and accepted by the commissioners' court. Appellants alleged that the erasure had been made before the bond was approved. The facts of this case sharply differentiate it from those of the cases cited by appellants, in which the alteration took place after the delivery of the papers. Appellants knew that A. A. Ash's name appeared in the body of the bond, and that it was signed by him on November 17, 1914, and they were charged with the knowledge that on November 30, 1914, when they acknowledged the bond, his name had been erased in both places. Their acknowledgment clearly indicated their willingness to be bound without being joined with A. A. Ash. There was no pretense that they would not have acknowledged the bond and continued to be bound by it had they known that A. A. Ash was no longer a surety. It was an afterthought to evade liability on a bond upon which they were willing to assume and continue liability on November 30, 1914. There is nothing in the facts on which to hinge the claim that the sureties were released from liability. Their agent made the erasure, and no one connected with appellee knew of it until it was an accomplished fact. All the facts tend to show that the erasure of the name was made with the knowledge and consent of the sureties. Moses v. United States, 166 U. S. 571, 17 Sup. Ct. 685, 41 L. Ed. 1119. There was no conflict of evidence as to when the name was erased. It was done before appellants sent it to the commissioners' court.

[11, 12] Of course, if the sureties had entered into an agreement among themselves that none would be bound unless all remained on the bond, that would not lessen their liability to the county, unless knowledge of the agreement had been conveyed to appellee before the bond was accepted. When the bond was presented to appellee with the name of A. A. Ash erased, appellee, in the absence of any notice or knowledge to the contrary, had the right to assume that the erasure had been made with the knowledge and consent of the other sureties. The erasure did not put appellee upon notice that it had been made without the consent of the other sureties, and that it released them from liability. Especially is this true where the bond was delivered by an agent of the sureties. Hess v. Schaffner (Tex. Civ. App.) 139 S. W. 1024; Gulf Live Stock Ins. Co. v. Love (Tex. Civ. App.) 181 S. W. 766.

[13] The court instructed the jury to return a verdict in favor of Atascosa county, as against T. S. Brite, a principal, and W. T. Brite, D. A. N. Duncan, administrator of W. Ash, deceased; Wright Williams, Mrs. Cornelia Martin, independent executrix of the estate of George M. Martin, deceased, G. L. Carver, M. L. Anderson, and J. N. Dixon, as sureties, jointly and severally, for the sum of $10,552. The jury returned a verdict for the amount named against T. S. Brite, as principal, and against all the sureties except W. T. Brite whose name was omitted from the verdict. It seems that the verdict was prepared at the suggestion of the court, but the stenographer inadvertently omitted the name of W. T. Brite, and it was returned in that condition by the jury, which did not leave the jury box. Afterwards, ascertaining the omission of the name, the judge on motion by appellee, during the same term of court, amended the verdict by interlining the name of W. T. Brite and changing the judgment to conform thereto. The instruction of the court to the jury to return a verdict had the effect of taking the case from the jury and a rendition of judgment by the court. The court spoke through the foreman of the jury, and the verdict and judgment were as fully and absolutely those of the court as though the jury had been discharged and judgment rendered by the judge. The jury had no option, exercised no discretion, passed upon no testimony, but at the command of the court signed a verdict dictated by him. He instructed them to return a verdict in a certain sum in favor of appellee, against certain parties, naming them, and told the stenographer to prepare a verdict to conform to that charge. The stenographer, assisted by the attorneys of appellee, through inadvertence or carelessness, did not follow the instruction of the court, but omitted the name of W. T. Brite. The error was not discovered until afterward, and then the court changed his judgment so as to conform to his instructions to the jury, which was the only legal verdict they could render, and which they doubtless desired to render. The court had the power to render the verdict of the jury certain by a reference to the charge. Chimene v. Baker, 32 Tex. Civ. App. 520, 75 S. W. 330; Smith v. Smith, 23 Tex. Civ. App. 304, 55 S. W. 541. If the court was authorized to direct the verdict, he had the power to make the verdict conform to the charge. Under the undisputed facts all of the sureties, W. T. Brite included, were jointly and severally liable on the bond, and there was no reason, and there could have been no intention upon the part of the jury, to omit the name of W. T. Brite from the verdict. It is plainly a mere unintentional omission, and it would be farcical to hold that the judge could not supply the omission. A rather curious phase of the case is presented by the sureties contending that Brite should be omitted, thereby increasing their liability.

[14] The court undoubtedly had the authority, and it was his duty, to change the description of Mrs. Martin to independent executrix from that of administratrix, as she was called in the verdict. The change could have been made in a verdict found on facts by the jury, as it was evidently a mistake which could not affect the validity of the verdict. The objection is trivial and technical.

[15] There is no evidence in the record that a valid attachment lien was ever levied on any property belonging to T. S. Brite, and there was nothing upon which to base the foreclosure of any lien. Appellants made no effort to have such lien foreclosed; they had no pleading in regard to it and asked no relief therefrom. They have not obtained any vantage point from which to urge error to the failure to foreclose the lien. They made no protest against the failure to foreclose during the course of the trial, and no objection was heard along these lines until an amended motion for a new trial was filed. There is no evidence of any sum of money being placed in the registry of the court.

[16] It was not necessary to show how much money was collected by the tax collector, but the issue was: How much did he appropriate and fail or refuse to pay over to the county? The evidence satisfactorily showed that, and that amount was all with which appellants have any right to be concerned.

This is a plain case of defalcation by a county officer for whose faithful performance of his official duties the sureties had stood sponsor and who seek to evade their responsibility on the veriest technicalities, containing no element of merit. There was no issue to present to a jury, and it was the plain and palpable duty of the judge to peremptorily instruct a verdict for appellee.

The judgment is affirmed.