### CLOPTON v. FLOWERS.   (No. 5531.)

(Court of Civil Appeals of Texas. Austin. Dec. 22, 1915. Rehearing Denied Feb. 2, 1916.)

1. EVIDENCE ⬤⟁177—SECONDARY EVIDENCE— CONCLUSION OF EXPERT ACCOUNTANT.

When books and accounts are voluminous, containing many items and covering a considerable portion of time, an expert accountant, who has examined them, may state his conclusion as to what they show.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 557, 570–579; Dec. Dig. ⬤⟁177.]

2. APPEAL AND ERROR ⬤⟁1056 — HARMLESS ERROR—EXCLUSION OF EVIDENCE—DIFFERENT RESULT.

Where the court did not find that a sale was absolute and vested title in the previous buyer, through whom defendant claimed, and where he may have reached the conclusion that the transaction between the seller and such buyer, although at first a conditional sale, became absolute by the buyer's payment of all the purchase money, and where the excluded testimony would have supported a finding that there had been no sale to the party under whom defendant claimed, and hence produce a different result, the exclusion was prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. ⬤⟁1056.]

Appeal from Caldwell County Court; J. T. Ellis, Judge.

Suit by A. M. Clopton against Van B. Flowers. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Page & Jones, of Bastrop, O. Ellis, Jr., and S. R. Graves, both of Lockhart, for appellant. E. B. Coopwood and J. B. Hatchitt, both of Lockhart, for appellee.

KEY, C. J. Appellant brought this suit against appellee to recover certain horses and mules and four sets of harness. Appellee, defendant in the court below, denied that the plaintiff had any title to the property, and alleged that he, the defendant, was the rightful owner thereof, and averred that he purchased the same from one Lovejoy, who was the owner thereof. There was a nonjury trial, which resulted in a judgment for the defendant, and the plaintiff Clopton has appealed. We overruled all of the assignments of error except the one hereafter discussed.

The undisputed proof shows that one J. K. Miller formerly owned the property in controversy, and that on the 29th day of June, 1914, he executed to appellant Clopton an instrument of writing, in form of a bill of sale, conveying, among other property, that here involved, and appellant testified that he bought the property from Miller on the

day referred to, and that he claimed title under the bill of sale mentioned. Appellee introduced testimony, especially that given by W. Lovejoy, tending to show that in April, 1913, Miller sold the property to Lovejoy; and the proof shows that on the 10th day of September, 1914, Lovejoy executed a bill of sale conveying it to appellee. J. K. Miller, as a witness for appellant, testified that he never sold the property to Lovejoy, but that they entered into an agreement, which was no more than a contract of sale, by which the title to the property was not to vest in Lovejoy until he had paid for it, and Miller testified that Lovejoy had never paid for the property. As said before, Lovejoy testified to an unconditional sale, by which title to the property vested in him at the time of the sale, although it was not then paid for. He also testified that he and Miller had a settlement, in which it was agreed that Miller owed him about $55, which settlement he claims was made at about the time their books had been examined by the witness Zorn. The proof shows that appellant, Clopton, is a contractor who does construction roadwork, and at the time involved in this transaction he seems to have had a contract for certain roadwork in Caldwell county, and J. K. Miller was a subcontractor, working under Clopton, and W. Lovejoy was working under Miller. The undisputed proof shows that in April, 1913, Miller and Lovejoy made a contract of some sort concerning the property in controversy; and if, as Lovejoy testified, it was an absolute sale, appellant was not entitled to recover, but if it was a conditional sale, and the title had not passed out of Miller, and he thereafter sold the property to appellant, then the latter was entitled to recover. As said before, Lovejoy testified that he had paid for the property, and that he and Miller had a settlement, by which it was agreed that Miller owed him about $55.

[1] The proof shows that both Miller and Lovejoy kept books relating to supplies furnished to Lovejoy by Miller, the payment of wages, etc. The books and accounts referred to covered a period of many months, and the testimony indicates that it was no easy matter to ascertain just what they disclosed. In view of these conditions it seems that Miller and Lovejoy agreed that one W. S. Zorn, who was shown to be an expert bookkeeper and accountant, should take the books, examine the same, and ascertain the state of accounts between them, whether Miller owed Lovejoy or Lovejoy owed Miller anything. Zorn performed the service referred to, and appellant's third assignment of error complains of the ruling of the trial court in refusing to permit Zorn as a witness to state the conclusion that he came to as a result of his examination of the books. The bill of exception shows that if Zorn had been permitted to do so, he would have testified that, as a result of his examination of the books, he reached the conclusion that they showed that Lovejoy was indebted to Miller in the sum of $525. The objection to the testimony made by appellee and sustained by the court was that it was immaterial and irrelevant, the opinion and conclusion of the witness, and that the books which had been introduced in evidence constituted the best evidence as to their contents. We sustain the assignment complaining of that ruling, and hold that the court committed material error when it excluded that testimony. The rule upon that subject is stated in section 1230 of Prof. Wigmore's valuable treatise on Evidence, as follows:

"Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed statements —as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper. Most courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available."

The authority cited announces a rule which seems reasonable and just that when books and accounts are voluminous, containing many items and covering a considerable period of time, it is permissible for an expert accountant, who has made an examination of them, to state his conclusion as to what they show.

[2] The judge filed findings of fact, one of which is that in April, 1913, Miller sold the property to Lovejoy. But the judge did not find that the sale was absolute and vested title in Lovejoy immediately, and he may have reached the conclusion that the transaction between Miller and Lovejoy, though at first a conditional sale, became absolute by reason of the fact that Lovejoy paid all the purchase money for the property; and the excluded testimony which would have been given by Zorn would have supported the testimony given by Miller, to the effect that Lovejoy still owed him about $525, and if that testimony had not been excluded, it may be that the court would have found that there was no sale of the property from Miller to Lovejoy.

Hence we hold that the record does not show, as contended on behalf of appellee, that the ruling referred to was harmless; and, as the excluded testimony was material and might have produced a different result, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.