## KENT COUNTY *v.* KRAKOWSKI.

1. PRINCIPAL AND SURETY—BONDS—RIGHT OF INJURED PARTY TO SUE IN OWN NAME.

   The bond of a public officer to faithfully perform the duties of his office is made for the benefit of any and all to whom he owes an official duty, and it is no longer required that actions upon such bonds be brought in the name of the obligee for the use and benefit of the party claimed to have been injured. 3 Comp. Laws 1915, § 12353.

2. EVIDENCE—ADMISSIONS—CONFESSION—ADMISSIBILITY.

   In an action against a defaulting public official and his surety jointly on his official bond, proof of his oral admissions to the prosecuting attorney of his defalcations and a written confession were admissible so far as he was concerned, where substantial facts beyond mere conclusions of law were included.

3. SAME—ADMISSIBILITY AGAINST SURETY.

   Such admissions, being admissible against the principal, cannot be excluded, and, being admitted as against him, will generally be considered against the surety.

4. PRINCIPAL AND SURETY—BONDS—CLERK OF COURT—LIABILITY—PROOF.

   While no recovery could be had upon the bond of a defaulting court clerk unless it was shown that the money was paid to him pursuant to some mandate of the court, it is not necessary to show that the order was reduced to writing or recorded in the court journal.

5. SAME — COURT RECORDS — NEGLECT OF CLERK — SECONDARY EVIDENCE—ADMISSIBILITY.

   While it is the general rule that an order of a court of record cannot be proved in a collateral proceeding otherwise than by a journal entry, yet the neglect of the clerk of the court to make the proper entries in regard to money passing through his hands would not bar other available evidence upon the subject, in an action against him and his surety on his official bond.

Error to Kent; Brown (William B.), J. Submitted June 5, 1919. (Docket No. 45.) Decided December 22, 1919. Rehearing denied April 10, 1920.

Assumpsit by the county of Kent against Alexander E. Krakowski, principal, and the Southern Surety Company, surety, on a bond. Judgment for plaintiff. Defendant surety company brings error. Affirmed.

*Jewell & Smith* (*John P. McCammon,* of counsel), for appellant.

*Fred P. Geib* and *Cornelius Hoffius,* for appellee.

STEERE, J. This is a companion case with *City of Grand Rapids* v. *Krakowski, ante,* 483, in the particular that defendants and bond sued upon are the same, and reference may be made to that case for a general statement of the situation so far as relates to Krakowski's official position, duties and delinquencies, the nature of the bond involved and the defendant insurance company's relations with him as his surety. Krakowski held the office of clerk of the superior court of the city of Grand Rapids from January 1, 1912, to December 27, 1917, at which time discovered and admitted defalcations resulted in his removal from office and subsequent litigation to recover from him and his surety for such defalcations.

In connection with his oral confessions to the prosecuting attorney he wrote and signed the following:

"I, Alexander E. Krakowski, do hereby make the following confession:

"As clerk of superior court, about four years ago, I began taking money, consisting of fines and costs paid in to superior court, and converting them to my own personal use. The amount taken to the best of my knowledge is about $8,000.00, in addition to about $1,600.00 taken this year and not turned over to the county treasurer. That I also for the past 2½ years did not turn over fees from civil cases, to the city treasurer.

"The money was used in purchasing a house and lot on land contract and furnishing the house—and spending freely.

(Signed)  "ALEX. E. KRAKOWSKI.
"Dated Dec. 27. 1917."

This action was brought by Kent county to recover from Krakowski and the defendant insurance company, which furnished and signed his official bond, the sums of money which in his official capacity as clerk of the superior court came into his hands for fines, costs and estreated bail in criminal cases, and was not by him paid over to the county treasurer as required by law. The case was tried in the Kent county circuit court before a jury, resulting in a verdict in plaintiff's favor for the sum of $8,913.30. The active defense was by the defendant surety company which urged many defenses both against the pleadings and proofs, among which were that the bond, even though good as a common-law obligation, did not comply with the statute and therefore action upon it could only be brought in the name of the obligee, for itself or the use and benefit of a party claimed to be injured; that Krakowski as clerk of the superior court of Grand Rapids was accountable only to the city, and any relations he bore to Kent county were but *ex officio*, not covered by his bond, and his surety therefore not liable for nonperformance of his duties in that relation; that no recovery could be had under the common counts, and there could be no recovery on the single special count because it counted upon several successive bonds and different terms of office. Numerous objections were interposed during the progress of the trial to the proofs offered and admitted to establish the many items of shortage included in the charge. In connection with a motion to strike out all testimony objected to and claimed incompetent defendant moved for a directed verdict both at the close of plaintiff's testimony and at the conclusion of all the testimony, on numerous grounds, and particularly because the record furnished no competent proof of any order or orders by the court directing payment to Krakowski

of any money charged against him in plaintiff's bill of particulars.

A bill of particulars was furnished defendant by plaintiff including a long list of claimed items of defalcations during Krakowski's term of office with case, numbers, etc., to proving which much of the time of the protracted trial was devoted. A motion for a new trial was subsequently made in which the various items of defalcation submitted to the jury were classified into groups, and the sufficiency of proof in relation to each group was argued before the court, under objections made and preserved, briefly as follows: Those sought to be proved by admission of the docket Krakowski kept as clerk, showing fines and costs paid to him without proof of any record of an order of court in relation thereto; certain items which should have been stricken out because they were withdrawn on the trial or no proof of payment to the clerk was made; those in relation to which the court record contained nothing to prove an order of the court beyond a payment to the clerk, and where no attempt or offer was made to prove an order, probation cards, docket or journal entries or anything of like nature. The motion was lengthy, and contained some 30 claimed grounds why it should be granted.

The court filed a written opinion reviewing the motion, in which it found that amongst the many items submitted to the jury and apparently included in the verdict there were certain specified items aggregating $408.35, not supported by competent proof sufficient to justify their submission, and the verdict was excessive to that amount. Overruling defendant's other contentions, the court denied its motion for a new trial on condition that plaintiff remit from the judgment the excess so found, which was done. Defendant duly filed abundant exceptions to the order of the court denying said motion, and brings the case

to this court for review on bill of exceptions containing 124 assignments of error, many of which we regard as either disposed of in the previous case involving the same bond, or not of a nature demanding discussion.

The superior court of Grand Rapids is a court of record with a seal, having within territorial limits of the city like general powers and concurrent jurisdiction with the circuit court of Kent county, with original and exclusive jurisdiction of all prosecutions in behalf of the State for crimes and offenses arising under State laws committed within the corporate limits of the city, except those cognizable by the police and justice's courts. While other litigation arises and is entertained in that court, its exclusive jurisdiction within the city of criminal cases triable in a court of record results in much of its time being occupied in entertaining and disposing of criminal cases under the State law by trial or otherwise, as to which the powers and duties of the court and its officers are the same as in the circuit courts of the State generally and controlled by the same State laws. Without further detail, it is sufficient upon that subject to cite the act creating said court, found in 3 Comp. Laws 1915, § 14682 *et seq.*, and *Attorney General* v. *Renihan,* 184 Mich. 273.

Neither is it necessary to now quote from, or discuss the form of and conditions in the bond involved, which is the same passed upon in *City of Grand Rapids* v. *Krakowski, supra,* where it is reviewed and construed. Its conditions for the faithful performance of the duties of his office embraced the duty imposed upon him as clerk of the court which he served, as it would the clerk of any circuit court, to pay over to the county treasurer within 20 days after its receipt any money received by him in his official capacity under order of the court, or pursuant to statute, on ac-

count of any recognizance, fine, penalty or forfeiture in criminal cases brought under the State law in that court. Sections 13431-13433, 3 Comp. Laws 1915.

Such bond of a public officer to faithfully perform the duties of his office is made for the benefit of any and all to whom he owes an official duty, and it is no longer required that actions upon such bonds be brought in the name of the obligee for the use and benefit of the party claimed to have been injured. Section 12353, 3 Comp. Laws 1915, with certain qualifications not relevant here, requires that:

"Every action shall be prosecuted in the name of the real party in interest, * * * *Provided*, That any person to whom a cause of action shall accrue upon the bond of any public officer, required to give bond to the people of this State, may prosecute a suit for recovery on said bond in his own name: *Provided, further*, That actions upon any bond, contract or undertaking lawfully made with any officer of this State, or of any county, township, school district, city or village, or to enforce any liability or any duty enjoined by law to said officer, shall be brought in the corporate name of the body for whose benefit such contract was made, or such liability or duty enjoined."

Error is urged upon the court allowing proof of Krakowski's oral admissions to the prosecuting attorney of his defalcations and written confession above quoted, which it is said were "directed to a conclusion of law," evidential of no facts upon which liability could be based, and necessarily prejudicial to the defense. Krakowski was a joint defendant in the case represented on the record by the same counsel as the surety company. His admissions included substantial incriminating facts beyond mere conclusions of law and were certainly admissible so far as he was concerned.

"Where the principal and surety are sued jointly, the admission of the principal being competent against

himself cannot be excluded, and being admitted as against him, will generally be considered against the sureties." Stearns on Suretyship (2d Ed.), p. 300; citing *Magner* v. *Knowles*, 67 Ill. 325; *Amherst Bank* v. *Root*, 2 Metc. (Mass.) 522.

On the trial it appeared that Judge William J. Stuart, judge of the superior court during the period under consideration, was deceased. The records of the court were found incomplete in the great majority of cases in the particular that no direct orders had been entered in the journal and signed by the judge pronouncing sentence and directing respondent to pay fines, etc. Defendant's counsel made seasonable objections in various forms to substantially the entire line of evidence pursued by plaintiff, under the general propositions that no liability could arise for any money which came into Krakowski's hands except it was received under order of the court, and that an order of a court of record cannot be proved in a collateral proceeding otherwise than by a journal entry, of which they say:

"No attempt was made on the part of plaintiff to show that the judgments which formed the foundation of its claim were ever in existence and destroyed so that secondary evidence was admissible to prove them,"

—to which statement plaintiff's counsel reply that it produced and offered in evidence all available court records and a written order signed by the judge requiring the defendant to pay fine and costs was produced in many cases, but where such could not be found secondary evidence was produced.

Early in the trial of the case counsel for plaintiff broadly made the claim that under his statutory duties any money received by Krakowski as a public official was public money as to him, and the law obligated him in the performance of an official duty to care for and pay it over to those lawfully entitled to it, in default

of which he and his bondsmen were liable; but on intimation from the court of an impression that the bare fact the clerk received the money without any evidence it came into his hands by some order of the court would not be adequate for recovery against the surety, plaintiff's counsel stated their position to be that there was a court order in each case but because entered on certain cards by the judge some of them appeared to be lost, and:

—"we are entitled at least to go to the jury on the question of whether there was a court order originally. We have introduced the docket showing that there was a criminal case against the respondent and that some action was had in court concerning it and that money was paid in to the clerk for some purpose. We claim it would not have been paid to the clerk unless there was a court order. That the fact that there was such a case pending and money paid in makes a *prima facie* case, and the surety company must show as a defense that it was a mere private matter."

It was shown that Krakowski kept some of the court records in loose leaf form, or by a card system. In explanation of the orders entered upon cards, it was shown to have been a practice followed by Judge Stuart in State criminal cases disposed of under the probation law, and by his successor, to use what are called "probation cards," containing the original order as pronounced to the respondent placed on probation, or a copy thereof, imposing costs and a weekly payment to a certain amount to be paid to the court through its probation officer, who paid it in as received to the judge or clerk of the court, taking receipt therefor and keeping an account in that connection. Of this Mr. Hyde, the court's probation officer, testified:

"All the money that he (Krakowski) signed for here was paid over to him by me, and was money

that I had collected from men on probation under order of Judge Stuart. Exhibit 5 which you show me contains copies of the original cards that the probationer is given at the time he is placed on probation. The cards contain an order, signed by Judge Stuart, with reference to the probationer, and that card is the basis for the account that I keep and for the moneys that I collect. * * * The judge signs the card that the probationer gets. The probationer carries it with him. * * * I have some cards on which I copied off the original cards, but they differ from the cards kept by the superior court. Both my record and the court's record are taken from the original which is signed by the judge and which the probationer has."

Preparatory to this case the Kent county board of auditors engaged a public accountant to go over all available records bearing upon Krakowski's shortage to the county, and plaintiff's bill of particulars was prepared from the results of his research, which started by listing the State criminal cases on the court docket and following each case out in detail through all available books and records of the court, and its officers, in quest of any written evidence of money received or paid out by the clerk in connection with the case. The various books and documents used by the accountant and relied upon by plaintiff were produced in evidence.

The scope of the detailed inquiry, purpose and nature of the available evidence produced is well summarized by the trial court as follows:

"Plaintiff caused to be produced in court and offered in evidence various books of record kept by the officers of the court, most of them having been kept by defendant Krakowski or under his direction. These books included the docket and journal of the court, the clerk's blotter, the clerk's cash book, the clerk's ledger, the clerk's receipt stubs, books of account kept by the probation officer of the court, Mr. J. E. Hyde, a large number of probation cards, so-called, containing

the original order, or a copy of the original order, made with reference to persons put on probation, and a large number of canceled checks showing payment by William J. Stuart, former judge of said court, to said clerk of various amounts designated upon said checks as costs, or fines, in certain cases named upon said check. These books and documents were offered, and were received by the court, for the purpose of establishing the total amount of moneys received by defendant Krakowski as clerk during his said term of office, which he was required, under the laws of the State, to turn over to the county of Kent. No items were claimed by the plaintiff to be recoverable by it except fines, costs and estreated bail which the jury should find from the evidence had been paid to the clerk of the court in cases handled during said clerk's term of office in which the people of the State of Michigan were proceeding against a respondent under the criminal laws of the State. Testimony was also offered by plaintiff showing the total amount paid by defendant Krakowski to the county treasurer during Krakowski's several terms of office on account of such items and such sums were credited to him."

The trial court in submitting the case plainly instructed the jury that no recovery could be had upon any item of plaintiff's claim unless it was shown that the money was paid to the clerk pursuant to some mandate of the court, but held that under the circumstances of the case it was not imperative for recovery that it be proven the order was reduced to writing, or recorded in the court journal, saying in explanation that while it was for the jury to determine from the admitted testimony whether or not each item claimed was paid to the clerk under an order of the court, yet:

"If a respondent were before this court at the present time and the court should, upon a plea of guilty of that respondent, say to him, 'You are fined $100 fine and $10 costs, and upon your failure to pay that sum immediately, you will be confined in the Kent county jail for ninety days,' and if the respondent

should step up immediately to the clerk and pay him $110, the full amount of the fine and costs imposed, he would be discharged. * * * Under the verbal, spoken order of the court, if the money was paid to the clerk, it would be paid officially and it would be as essentially and finally the money of the county as though the respondent were required to wait until the next day and have a written order duly placed upon the journal and signed by the court." Also,—

"If there are any items in this case which are supported by no testimony as to an order of the court or the payment of the money other than the mere bare or naked fact that a credit or charge is made upon the cash book of the clerk, then that is not sufficient to charge the bonding company with liability for such item. There must be other and additional testimony tending to show and establish the order of the court that the money should be paid, in addition to the mere fact that certain money was paid, before you can find the bonding company liable for such amount or item."

On the theory that the admitted evidence was competent to raise an issue of fact for the jury upon whether the items in question were received pursuant to an order of the court, it may be said that the charge of the court in explaining the nature of the case, the principles of law involved, and the duty of the jury, was fair, clear and ample.

Only such items received by Krakowski were permitted, or claimed by plaintiff, as were in some manner shown connected with or based on an actual criminal case under the State law found entered upon the court docket, at some time entertained and acted upon by the court while he was clerk and in charge of its records; and each item was sustained by some written proof, mostly in his handwriting, indicating that it had been received by him as clerk of the court and the official character of the transaction, sufficient for a fair inference or presumption that it was paid and received as public money pursuant to some order of

the court, which it was the duty of the clerk under the statute to pay to the county treasurer.

In 10 Enc. of Evidence, p. 730, it is stated as a general proposition: "The official records of the clerk of a court are competent evidence of his acts," and at page 780, "when the record has not been extended or made up, the minutes and docket entries and files of the case are admissible to prove the proceedings of the court." To like effect, in the early case of *Lowry* v. *Cady,* 4 Vt. 504, recognizing that docket minutes, etc., were not the best or proper evidence where a judgment or order was of record, and should not be received unless there was special and good reason for "dispensing with the usual and appropriate evidence," the court said: "In this case, as the judgment was not recorded, the court was justified in receiving other evidence of the same than an exemplified copy." In *Cooper* v. *People,* 28 Colo. 87 (63 Pac. 314), it was held that books kept by the clerk, though not expressly authorized by statute, are *prima facie* evidence of moneys officially received by him as thereby indicated, binding both upon him and his sureties.

While the general rule of evidence contended for by defendant is not to be questioned in its proper application, the manifest, impelling reason for dispensing with a technical demand for "the usual and most appropriate evidence" in the instant case is that defendant Krakowski, whose duty it was to make the proper record which would furnish such evidence, failed to do so. It would be a strange rule of evidence which under such circumstances protected a defaulting clerk of a court of record and his surety, and rewarded his neglect to properly enter the proceedings of the court upon its records, by blocking all other available evidence upon the subject because the records he should have made but did not, and which would have been the best evidence, are not in existence.

Any want of certainty in the proofs is manifestly attributable to his neglect of duty, which ought not to operate to protect him and his surety where other evidence, direct or inferential, is available. The rulings upon admission of testimony complained of are not inimical to a fair interpretation and application of recognized rules of evidence.

The following reflections by Justice CAMPBELL in the early case of *People* v. *Treadway,* 17 Mich. 480 (involving an action against a defaulting county clerk and his surety), are not inappropriate here:

"If such an officer is to be regarded as acting unofficially whenever he violates his duty, it is not easy to see what object there can be in requiring official bonds. They are not meant to be mere formalities, and they can only be made to secure against the consequences of some sort of misdoings. Their object is to obtain indemnity against the use of an official position for wrong purposes, and that which is done under color of office, and which would obtain no credit except from its appearing to be a regular official act, is within the protection of the bond, and must be made good by those who signed it."

The judgment will stand affirmed.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.