## Esterman-Verkamp Company v. Rouse.

(Decided December 11, 1925.)

## Appeal from Boone Circuit Court.

1. Pleading—Permitting Filing of Reply After Issues Made up and Proof Taken Held Not Abuse of Discretion.—Where, after defendant filed answer and counterclaim, order was entered that by agreement all affirmative allegations were traversed of record, there was no abuse of discretion in permitting reply to be filed traversing answer and counterclaim after issues were made up and proof taken.

2. Appeal and Error—Contention that Garnishees were Ordered to Pay Sums Due, Without Proof They Owed Defendant Anything, Held Without Merit.—Contention that court ordered garnishees to pay sums due from them to defendant, without answers being filed by them, or proof that they owed defendant anything, held without merit, where garnishees have not complained nor defendant pointed out wherein orders were prejudical.

3. Evidence—Audit of Defendant's Books Made by Expert Accountant Held Competent.—In suit by salesman for accounting, where records, invoices, bills, orders, ledgers, and other papers were too numerous to be examined conveniently or satisfactorily in court, audit made and verified by expert accountant, delivered to adverse side, which had custody of original records, held competent and properly received in evidence.

4. Master and Servant—Discounts Deducted in Estimating "Cost Price."—Where profits of retail salesman were to be calculated on cost of goods in wholesale grocery's warehouse, in estimating such cost deduction was properly made for cash discounts wholesaler took advantage of; "cost price" being what is actually paid for an article.

5. Master and Servant—Discounts Not Taken Advantage of by Customers, Not Chargeable Against Salesman in Calculating Profits.—Where profits of salesman for wholesale grocery were to be calculated on prices at which goods were sold to retail merchants, cash discounts allowed salesman's customers, but which they did not take advantage of, should not be charged against him.

6. Estoppel—Salesman Not Estopped by Receiving Monthly Statements.—Where traveling salesman's profits were to be one-half difference between cost of goods in wholesaler's warehouse and prices at which they were sold to merchants, salesman was not estopped to sue for accounting of profits by his receipt of monthly statements; facts which rendered them incorrect having been concealed from him.

7. Master and Servant—Reducing Claims to Cover Error in Audit Held Erroneous.—Where no error was shown in audit of defendant's books by plaintiff's expert acountant, it was error to reduce amount of plaintiff's claims to cover error in audit.

8.   Master and Servant—Allowing Offset Held Erroneous as Not Sus-
     tained by Pleadings or Proof.—In suit for accounting, offsetting
     claim of plaintiff on theory that he had guaranteed account of his
     son to defendant held erroneous, where offset was sustained
     neither by defendant's pleading nor by proof.

9.   Master and Servant—Note for Advance to Salesman Held Void.—
     Where wholesaler advanced named sum to traveling salesman,
     and note therefor showed it was to be void if salesman's sales
     were satisfactory, evidence that in various settlements during
     succeeding four years no claim was set up as to note and other
     evidence held to show that parties considered it void according
     to its terms.

S. W. TOLIN and MATTHEWS & MATTHEWS for appellant.

JOHN L. VEST for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirm-
ing original appeal, reversing cross-appeal.

The appellee, W. O. Rouse, worked for appellant, the
Esterman-Verkamp Company, a wholesale grocery con-
cern, from January 1, 1918, to July 1, 1922, under a con-
tract, the terms of which, admitted by the pleadings, were
that appellee was to travel over certain parts of Kentucky
and sell to retail merchants the goods of appellant; appel-
lee was to pay his own traveling expenses and appellant
was to deliver the goods sold if satisfied as to the credit
rating of the purchasers. For his services appellee was to
receive "one-half of the difference between the cost of the
goods in the warehouse and the prices at which said goods
were sold to retail merchants." During the term of his
service, appellee received monthly settlements from ap-
pellant covering his compensation. He complained several
times as to their being incorrect, and although he sought
to have them adjusted he never succeeded in getting the
president of appellant to go over these matters with him,
although the president promised many times to do so.
After he quit his employment, appellee discovered that
his profits as computed by appellant's cost clerk had in
many instances been changed by the president and such
changes had served to reduce materially his compensa-
tion.   He thereupon brought this suit in the nature of an
action for accounting to ascertain his correct compensa-
tion, alleging in his original petition, that it was at least
as much as $2,500.00 more than had been paid him. After
he had had opportunity to inspect appellant's books, as
we shall presently see, appellee filed an amended petition

in which he separated his cliam into five classes: First, a claim for one-half of $2,023.55 caused by changes in the figures of the cost clerk by the president without right and by mistakes in bookkeeping in calculating his profits; second, a claim for one-half of $4,079.65, representing cash discounts received by appellant in paying for the goods it bought and resold through appellee; third, a claim for one-half of $1,470.02, being cash discounts appellant claimed it had allowed appellee's customers but which had never been received by them; fourth, a claim for one-half of $756.70, drayage wrongfully claimed by appellant; and fifth, a balance of $31.28 admittedly due appellee from appellant.

The answer and counterclaim of appellant consisted of a traverse, a plea of estoppel based on appellee's reception of the monthly settlements, a counterclaim on the theory that appellee had been overpaid some $800.00, and another counterclaim on a note for $210.00.

After the issues had been made up, appellee tried ineffectually to take the deposition of appellant's secretary and to get him to produce the books of the company in that connection. Appellant was a nonresident corporation located at Cincinnati. This secretary lived in Covington. The president of the company forbade the production of the books by the secretary. After this abortive attempt, the appellee procured from the court, in term time as the record shows, an order directing appellant to deliver to the clerk of the court all the original orders taken by appellee for goods of the appellant, also all original reports of cash collected and discounts allowed and taken by appellee's customers. After this order had been entered, appellant and appellee through their counsel agreed that if appellee would not insist on a compliance with this order by appellant, appellee could inspect and audit the books of the appellant at its home office. In accordance with this agreement, appellee and his counsel, who is also an expert accountant, did visit the office of the company and after several months' hard work, compiled a complete audit of the matters here in controversy.

In visiting his trade, appellee took the orders of his customers on order blanks. These he sent in to appellant. On the left side of these order blanks was a column wherein the cost clerk would figure on each item the

profit or loss incurred in its sale. In calculating this cost, the clerk would take the invoice price of the article, deduct any trade discount allowed, add the drayage and use the resulting figure as the "cost in the warehouse" of the article. He did not take into consideration cash discounts. These orders were then turned over to the general bookkeeping department and after being entered on a sales ledger, access to which was denied appellee while he worked for the appellant, were bound along with orders from other salesmen in monthly bunches. In making the audit, appellee and his counsel first had to sift out from some 200,000 orders those belonging to appellee and these numbered about 7,600. Of these, appellee found changes in only 1,088. Appellee then had to trace these orders through the sales ledger, compare them with thousands of invoices and then to point out where the figures of profit made by the cost clerk had been changed by the president without any basis for the same. That the president did make changes is admitted. Drayage bills had to be examined, discounts allowed appellant had to be looked into as well as discounts allowed by it. The result of this laborious and searching work was embodied in a very comprehensive report wherein all the claims of appellee and the basis for the same were fully set forth. This report was then turned over to appellant's counsel so that appellant could examine the same, compare it with it books, point out any errors in it and so reduce the issues of fact to be tried. After appellant and his counsel had had possession of this report for over three months, appellee finished with his proof, introducing the report in evidence. Appellant then took its proof and the case was submitted for judgment.

The lower court adjudged the appellee the relief he sought on all his claims except the fourth which it dismissed. In allowing these claims, though, the court in order to be sure that no mistakes had crept into appellee's audit, reduced their amount. As to the fifth item, it appearing that appellee had guaranteed an account of his son with appellant, the court offset it on the amount awarded appellee. On appellant's counterclaim, the court dismissed the $800.00 alleged overpayment, but gave appellant judgment for its note of $210.00. From this judgment appellant brings this appeal and the appellee a cross-appeal.

The first ground urged for reversal is that the lower court erred in overruling appellant's motion to quash the affidavit of appellee for a warning order. The answer to this is that the court did not overrule this motion but sustained it as is shown on page 15 of the record herein.

It is next urged that the court should have sustained appellant's demurrer to appellee's original petition. Appellant asserts generally that this petition is defective but after reading it, we understand why appellant is not more specific in its attack. The lower court committed no error in this respect.

Appellant's next contention is that the court erred in permitting appellee to file a reply traversing the answer and counterclaim after the issues had been made up and proof taken. On page 70 of the record appears this order: "By agreement of parties all affirmative allegations contained in the —— are now traversed of record." This order was entered after appellant had filed its answer and counterclaim. As other orders traversed of record the affirmative allegations of appellee's amended petitions, there was nothing to which this order could refer except appellant's answer and counterclaim. That appellant knew its pleading had been put in issue is evident from the way it practiced this case and took its proof. The court then committed no abuse of discretion in permitting the reply, simply a traverse, to be filed. This reply did no more than had already been accomplished by the agreed order referred to.

Before considering the contentions of appellant which go to the merits of this suit, we must notice one more technical objection urged to the judgment of the lower court. It is contended that he ordered certain garnishees to pay certain sums due from them to appellant into court without any answers being filed by them or any proof taken that they owed appellant anything. The sums aggregated only a few hundred dollars. The garnishees have not complained of this action of the court, and appellant has not pointed out how this action was prejudicial to any of its substantial rights. We therefore conclude that like the other technical objections, made by appellant, there is no merit in this one.

Passing now to the merits, appellant contends that the trial court erred in awarding any relief in the first three classes allowed. It admits that it owes the fifth. The audit of appellee, if competent, established his right

to the claims embodied in these three classes. That it was competent, we think is clear under the rule announced in Louisville Bridge Co. v. L. & N. R. R., 116 Ky. 258, 75 S. W. 285; Fidelity Deposit Co. of Md. v. Champion Ice Co., 133 Ky. 74, 117 S. W. 373; and Edelen v. Muir, 163 Ky. 685, 174 S. W. 474. See also 22 Corpus Juris, p. 1017. In the Louisville Bridge Company case, *supra,* we held, in substance, that where the results of voluminous facts contained in writings or of the examination of many books, papers or records are to be proved and the necessary examination of this documentary evidence cannot be conveniently or satisfactorily made in court, an audit of the same by an expert accountant or other competent person, verified as correct by him, and after the opposite side has had reasonable opportunity to examine it and check it for errors, is competent to prove the facts embodied therein. The instant case comes squarely within this rule. The records, invoices, bills, orders, ledgers and other papers were too numerous to be examined conveniently or satisfactorily in court. The audit was made by an expert accountant. It was delivered to the adverse side, which had custody of the original records, for examination and check. They retained it some three months. It was verified as correct in evidence by the accountant who made it. It is thus clear that the audit was properly received in evidence. This audit demonstrated that the profits as established from the invoices of appellant, its drayage bills and its other records and as calculated by appellant's cost clerk had in many instances been changed by its president; that the costs as calculated by the cost clerk were correct except as to cash discounts allowed appellant, and of which the cost clerk knew nothing; that cash discounts were allowed to and taken by appellant; and that appellant had charged appellee with a uniform charge of two per cent on all his sales to cover cash discounts allowed his customers when at least twenty-five per cent of them did not take advantage of the same. The audit established the figures claimed by appellee. Appellant introduced no evidence to point out specifically any error in this audit, although it had ample opportunity to do so if there was any error. Its president insisted that the cost clerk had been in error in taking the invoice price in many instances; that the cost clerk had failed to average the invoice costs; that no account had been taken of the averaging up of costs due

to swells in canned goods and other losses; and that advertising and storage costs had been ignored. His testimony, however, along these lines dealt only in generalities. He did not prove in any case where or how much the cost as calculated by the cost clerk or as reported in the audit was incorrect, due to any of these matters. We must therefore accept the figures shown by this audit as being correct.

Appellant, however, insists that appellee should not have been allowed the cash discounts it took advantage of. Remembering that the appellee's profits were calculated on "the cost of the goods in the warehouse," we are unable to understand why such cash discounts should not be considered as well as trade discounts, the latter of which appellant concedes. The cost price is what is actually paid for an article. Black, Law Dictionary; Buck v. Burk, 18 N. Y. 337. In Webster's New International Dictionary, "cost" is thus defined: "The amount or equivalent paid, or given, or charged, or engaged to be paid or given for anything bought or taken in barter or service rendered." In McCoy v. Hastings Co., 92 Iowa 585, the court said that the cost price was the amount in fact paid. Hence it is clear to us that the cash discount should be considered in calculating the cost of the goods in the warehouse.

By a parity of reasoning, cash discounts allowed appellee's customers, but which they did not take advantage of, should not be charged against him. His profits were calculated with regard to the "prices at which said goods were sold to retail merchants." If the customers did not take the discount, then the prices at which the goods were sold were the list prices.

Appellee was not estopped by his reception of the monthly statements. On their face, they appeared all right. The facts which rendered them incorrect were concealed from him by appellant. It knew the truth all along. Hence, as said in 21 C. J., at page 1138:

"As an estoppel *in pais* is never allowed to be used as an instrument of fraud, but only to prevent injustice, it is therefore essential that the party claiming the benefit of the estoppel should have proceeded in good faith. Conduct or representations induced by his own conduct or representations

especially when fraudulent cannot furnish the basis of a claim for an estoppel.''

On the original appeal, then, we are of opinion that the judgment should be affirmed.

On the cross-appeal, appellee admits the court correctly dismissed its fourth class of claims but insists that the court erred in reducing the amounts allowed on the first three classes and in offsetting the fifth class. As heretofore stated, the court reduced the amount of the first three classes to cover any possible error in appellee's audit. The trouble about the court's action in this respect is that no error was shown in said audit. If it competently proved one dollar of appellee's claim, it competently proved the whole amount. As to the fifth class, the court offset it on the theory that appellee had guaranteed the account of his son to appellant. There is no pleading in the case in which appellant asks this allowance and no proof that the son had not paid his debt. The court should not have offset it. The aggregate amount of the first, second, third and fifth classes of appellee's claims as shown by the evidence comes to $3,818.88. The court only allowed appellee $3,002.90. To the extent of the difference, its judgment is erroneous and on the cross-appeal is reversed, with instructions to enter a judgment in favor of appellee for $3,818.88, with interest from the date of the original judgment until paid, instead of the $3,002.90 allowed by the trial court.

This disposes of all the issues in this case except with respect to the note of $210.00. It is shown in evidence that appellant in January, 1918, advanced appellee the sum of $210.00. This sum he added to money of his own and with the total bought an automobile in his own name to use in visiting his trade. For the $210.00 thus advanced him, appellee executed and delivered to appellant his demand note. In the body of the note appears this clause:

"This note is to be void on condition of sales of Esterman-Verkamp Company being satisfactory in accordance with arrangements made with H. F. Esterman.''

Appellee worked for appellant thereafter for over four years. In the various settlements made with him, no claim was set up as to this note. When he severed his

connection with appellant in July, 1922, they paid him a small balance due him and said nothing about the note. Appellee never heard of it after its execution until it appeared as a set-off in this case. Although appellant's president says that appellee's sales were not satisfactory, the other evidence in this record does not bear him out. Appellee worked for appellant for over four years with nothing said about the note. He left the employ of appellant and was not discharged. Beyond the ordinary goading that salesmen expect of their salesmanager, no complaint was made about his sales while he worked for appellant. We are convinced that long before appellee ceased to work for appellant, the parties had considered this note void according to its terms, and its appearance in this suit is an afterthought. The lower court should have dismissed this claim of appellant and the cross-appeal of appellee in this connection is sustained.

The judgment on the original appeal is affirmed. On the cross-appeal it is reversed, with instructions to enter a judgment in conformity to this opinion.