AMERICAN SURETY CO. OF NEW YORK et al. v. NORTH TEXAS NAT. BANK et al.   (No. 10320.)

Court of Civil Appeals of Texas.   Dallas. Jan. 5, 1929.

Rehearing Denied Feb. 23, 1929.

Saner, Saner & Jack and Turner & Rodgers, all of Dallas, for appellants.

Thomas, Storey & Grady and Touchstone, Wight, Gormley & Price, all of Dallas, for appellees.

LOONEY, J. North Texas National Bank brought suit against W. C. Spangler, Southwest National Bank of Dallas, American Surety Company, and the Royal Indemnity Company. Plaintiff's allegations are, in substance, that Spangler was employed by it as teller, and through his dishonest and criminal acts it sustained a loss of $38,571.-28; that by its bankers' blanket bond issued July 7, 1925, the Royal Indemnity Company, called Indemnity Company, obligated itself to indemnify plaintiff to an amount not exceeding $100,000 from and against any loss it might sustain through any dishonest or criminal acts of any of its employees; that the loss sustained was within the period covered by the bond, for which both Spangler and the company were liable; that on May 13, 1925 (effective May 16, 1925), plaintiff succeeded by contract of purchase to the banking business of Southwest National Bank, called Southwest Bank; that on and prior to July 7, 1923, Spangler was also employed by Southwest Bank in same capacity, that is, as teller; that the American Surety Company, called Surety Company, by its bankers' blanket bond, effective July 7, 1923, to July 7, 1925, agreed to indemnify said bank to an amount not exceeding $100,000 against any loss it might sustain through any dishonest or criminal acts of any of its employees, etc.; that upon the succession to its business by plaintiff, the liability of Surety Company, by a rider attached to said bond, was continued in favor of plaintiff to July 7, 1925, and thus the Surety Company became liable to plaintiff for all loss sustained by reason of Spangler's dishonest or criminal conduct committed from and including May 16, 1925, to July 7, 1925; and further alleged that, if the loss occurred prior to May 13, 1925, the Southwest Bank was liable to it under the terms of the succession contract.

The Surety Company answered by general and special exceptions, general and special denials. The Southwest Bank answered by general demurrer and denial, and, in a cross-bill, over against Surety Company, alleged, in substance, that by different bonds issued it agreed to indemnify Southwest Bank against loss from any dishonest or criminal acts of any of its employees; that prior to the sale of its banking business to North Texas Bank, Spangler, one of its employees, embezzled from it the principal sum of $38,571.28, which was replaced by Spangler on May 16, 1925, but interest thereon was not paid, wherefore it prayed for judgment against both Spangler and the Surety Company for the interest that accrued upon the various sums embezzled. In answer to the cross-bill, the Surety Company pleaded misjoinder of causes of action, general denial, the statutes of limitation of two and four years (Rev. St. 1925, arts. 5526, 5527), and prayed that, if judgment should, in any event, be rendered against it in favor of either plaintiff or Southwest Bank, that it have judgment over against Indemnity Company.

Indemnity Company urged general and special exceptions, general denial, and a special plea to the effect that the bond issued by it to plaintiff upon which the suit is based became effective July 7, 1925; that Spangler's embezzlements were committed prior to that date; that the loss resulted when the money was actually appropriated; and that his acts of concealment did not create a loss within the meaning of the bond. The Indemnity Company prayed, however, that if, in any event, judgment should be rendered against it in favor of plaintiff, for a loss that accrued prior to July 7, 1925, that it have judgment over against Surety Company for the same amount.

The case was tried without a jury and resulted in judgment for plaintiff against both Indemnity Company and Surety Company for the principal sum of $38,571.28, with $9,-605.04 interest; in favor of Indemnity Company over against Surety Company for same amount; in favor of each of these companies against Spangler for same amount; in favor of Southwest Bank on its cross-bill against Surety Company for $3,672.36 interest; that plaintiff take nothing on its cross-bill against the Indemnity Company. Both bonding companies have appealed.

The material facts are these: Spangler was employed as teller, first by the Security National Bank of Dallas, until it was succeeded by Southwest Bank on June 19, 1921, was continued by the latter in same capacity, until it was in turn succeeded by plaintiff bank on May 16, 1925, and thereafter served the latter in the same capacity until the discovery of his shortage September 1, 1925.

Spangler began to embezzle money prior to January 10, 1919, while in the service of Security National Bank, and continued at intervals during his service with Southwest Bank until April, 1925, when the aggregate amount of his embezzlements reached the principal sum of $38,571.28. He succeeded in concealing his wrongdoing by withhold-

ing for a day or two evidence of deposits made by customers, and when other deposits were made would pass the latter in with the withheld credit slips, when proper credits would be entered on the books in favor of said depositors, and, in turn, would withhold evidence of the other deposits, which were credited later in the same way. On Monday, May 16, 1925, the first day he served North Texas Bank as teller, in like manner, he caused money deposited by a group of its customers, equal in amount to his shortage, to be passed to the credit of customers of the Southwest Bank of the Saturday preceding, evidence of whose deposits he had withheld, and throughout the time he served North Texas National Bank as teller, from day to day, he withheld evidence of deposits, equal in amount to his shortage, which, within a day or two, could be properly credited with money deposited by other customers, until detected September 1, 1925. On the next day he made a full confession and at that time had on his person evidence of deposits made September 1, 1925, by five certain depositors, that equaled his shortage. These five depositors had not been credited, as the money deposited by them was passed by Spangler to the credit of a preceding group, whose deposit slips he had in like manner been withholding. Plaintiff bank recognized and discharged its liability as debtor to these five depositors by making proper settlements.

Aside from questions that grew out of the cross-bill of Southwest Bank against Surety Company, for the recovery of interest to be discussed later, this contest is largely between the two bonding companies as to which should be compelled to pay the loss sustained by plaintiff. The Indemnity Company contends that the loss occurred prior to the effective date of its bond, whilst the contention of Surety Company is that the loss occurred after its bond expired, but each company prays, in the event of an adverse judgment as to it, for judgment over against the other.

The pertinent provisions of the bonds of these companies are in effect the same—that is, each agreed to indemnify its insured against any loss through any dishonest or criminal act of any of its employees, etc., to an amount not exceeding $100,000. It follows, therefore, that the mere commission of dishonest or criminal acts by Spangler was not sufficient to fix the obligation of indemnitor to pay; a loss must result therefrom before liability under the bond could exist. Therefore if, on September 2, 1925, Spangler, with outside money, could have caused proper credits to be entered in favor of the five depositors of September 1, 1925, whose deposits he diverted in favor of prior depositors, plaintiff would have lost nothing, and there could have been no recovery on the bond, notwithstanding the many acts of dis-

honesty and crime committed by him during the preceding ten years. When Spangler received the money of the five customers of the bank September 1, 1925, the relation of debtor and creditor was created between them and plaintiff bank, although they received no credits for the amounts deposited. Plaintiff discharged its liability to these, and, in doing so, was compelled to draw upon its resources other than general deposits. This was not the case as to other depositors; they had been properly credited, and presumably were paid from general deposits in due course of business, and thus, on September 2, 1925, Spangler's protacted dishonesty and crimes reached a climax, culminating in loss to plaintiff of the sum of $38,571.28.

Indemnity Company, combatting this idea, cites an array of authorities in support of its contention that the loss to plaintiff did not occur during, but prior to, the effective date of its bond.

After careful examination, we are of the opinion that each case cited is distinguishable from the present case, either on the facts or conditions of the bonds involved. The cases seemingly relied upon by Indemnity Company with greatest confidence are: Fidelity & Casualty Co. of New York v. National Bank (C. C. A.) 71 F. 116; First National Bank v. National Surety Co. (C. C. A.) 130 F. 401, 66 L. R. A. 777; Royal Indemnity Co. v. Vitrified Products Co., 117 Ohio St. 278, 158 N. E. 827.

Fidelity & Casualty Co. of New York v. National Bank (C. C. A.) 71 F. 116, was a suit on a bond to recover the sums embezzled by an employee of plaintiff bank. The bond contained a condition, among others, that no liability would exist for an embezzlement not discovered within twelve months after the expiration of the bond. The employee, by falsifying books and records of the bank, evaded detection until after the twelve months' period. The court held that the failure to discover the embezzlement within twelve months was a complete bar to the action. That question is not involved in the instant case. First National Bank v. National Surety Co. (C. C. A.) 130 F. 401 (opinion by Judge Lurton), turned on the proper application as between different sets of sureties of deposits. The bookkeeper of the bank had, by falsifying the record during a period of four years, given a customer a fictitious credit of about $50,000. During the four years the bank was protected by different bonds, the last, the one in suit, covered only a few months, during which time deposits made by the favored customer exceeded drafts drawn against the account. The court held that plaintiff could not recover because, by applying deposits as credits during the period covered by the bond, no loss was sustained, notwithstanding, as the net result of the dishonesty of the book-

keeper for the four years, a fictitious credit of $50,000 was created in favor of the customer, which resulted in an actual overdraft and loss to the bank of that amount. This case bears but a slight resemblance to the case under consideration. The other case, that of Royal Indemnity Co. v. Vitrified Products Co., decided by the Supreme Court of Ohio, reported in 117 Ohio St. 278, 158 N. E. 827, bears a closer resemblance to the instant case. The bond involved there protected the Products Company against pecuniary loss of money, funds, etc., that it might sustain by any act or acts of fraud or dishonesty (including embezzlements, abstractions or misapplications) of certain of its employees, including its cashier. The cashier embezzled funds of insured and covered same with funds subsequently collected from debtors of the company, and continued this procedure, undetected, until his death. The bond in that suit became effective subsequent to the actual taking of money by the cashier. The court held that the loss occurred when the original act of taking was committed; that the use of money subsequently collected to cover prior defaults did not constitute a new pecuniary loss, in that the loss had already been sustained. While this case resembles the one at bar in the method pursued by the dishonest employee, yet in a very material sense it is distinguishable in this, the cashier, in misapplying subsequent collections to cover up prior defaults, committed no act from which a loss could have developed, whilst in the instant case, by juggling and manipulating deposits and credits, Spangler not only avoided detection for years, but had so circumstanced the case as to postpone the maturity of the loss as well.

We are of the opinion, therefore, that the court did not err in rendering judgment for plaintiff against the Indemnity Company for the amount of the loss, to wit, $38,571.28, but, in this connection, we find that the court erred in allowing an excessive amount of interest. The loss having occurred September 2, 1925, plaintiff is entitled to interest on the amount lost from that date to December 9, 1927, the date of judgment, at 6 per cent. per annum, which produces the sum of $5,249.88.

Having reached the conclusion that no loss occurred to plaintiff during the life of the bond issued by Surety Company, as extended by the attached rider, we sustain its contention and hold that the judgment against it for plaintiff is erroneous.

The Surety Company also complains of the judgment over against it in favor of the Indemnity Company. These bonding companies were not cosureties, nor sureties bound for the performance of the same thing; in fact, the liability of Surety Company ended on July 7, 1925, at the instant the liability of the Indemnity Company began. It follows, therefore, that the doctrine of contribution between sureties is not applicable to the case. If the judgment in favor of Indemnity Company over against the Surety Company was authorized at all, it must be based upon the doctrine of subrogation.

The remedy of subrogation may exist, even in the absence of a contract, where a party, not a volunteer, discharges an obligation for which another is primarily liable. In such event, equity will clothe the party thus discharging the obligation in the legal garb with which the contract he has discharged was invested, and will substitute such party to every equitable interest and purpose in the place of the party whose obligation he has discharged. Pease v. Egan, 131 N. Y. 262, 30 N. E. 102, 105; Galbraith, etc., Co. v. Long (Tex. Civ. App.) 5 S.W.(2d) 162, 167.

But no loss was sustained by insured through misconduct of Spangler committed during the life of bonds issued by Surety Company; no liability existed for which judgment could properly have been rendered against it; hence the doctrine of subrogation was not invoked by the facts.

The only authority cited by Indemnity Company, in support of the contention that it was entitled to judgment over against the Surety Company, is the case of Yawger v. American Surety Co., 212 N. Y. 292, 106 N. E. 64, L. R. A. 1915D, 481, 484. This case is not in point. The question of subrogation was not involved. The case turned on the application of the doctrine of contribution between cosureties on official bonds of a town treasurer. Among other things the court said: "We think that to the extent of the loss suffered during the first term the defendant, as well as the second surety, was liable to the town, and that the second surety, having discharged a debt for which the defendant was equally bound, is entitled, through the remedy of contribution, to enforce an equitable division."

We are of the opinion that the judgment over in favor of Indemnity Company against Surety Company is erroneous.

Surety Company also complains of the judgment for interest against it in favor of Southwest Bank. The funds embezzled by Spangler from Southwest Bank were afterwards replaced, and his liability extinguished by the application thereto as credits deposits made by customers of plaintiff bank, as before explained, but Southwest Bank was deprived of the use of the money in the meantime, suffered a loss incident thereto, and was entitled to recover from both Spangler and Surety Company 6 per cent. interest as damages on the money embezzled. Surety Company was obligated to indemnify and hold Southwest Bank harmless from any loss through any dishonest or criminal act of Spangler's. If this obligation is performed

by Surety Company, the bank must be placed in the same position it would have occupied if Spangler had not taken and detained its money.

The statute fixes the value of the use or detention of money, arising on written contracts where no rate of interest is agreed upon, at 6 per cent. per annum, and by analogy the same measure will be applied as damages where money has been converted. Commercial, etc., Bank v. Jones, 18 Tex. 811, 830; Houston & T. C. Ry. Co. v. Jackson, 62 Tex. 209; Heidenheimer v. Ellis, 67 Tex. 426, 3 S. W. 666; Baker v. Smelser, 88 Tex. 26, 28, 29 S. W. 377, 33 L. R. A. 163; Watkins v. Junker, 90 Tex. 584, 40 S. W. 11; Schulz v. Tessman, 92 Tex. 488, 49 S. W. 1031; McDaniel v. National, etc., Co., 112 Tex. 54, 244 S. W. 135.

■ The Surety Company also contends that the claim for interest was barred by both the two and four years' statutes of limitation prior to the filing of the cross-bill. The bond of the Surety Company being a written contract that ascertains the sum payable within the meaning of article 5070, R. S. 1925; Federal Life Ins. Co. v. Kriton, 112 Tex. 532, 249 S. W. 193, the claim is controlled by the four years' statute. Article 5527, R. S. 1925; Maryland Casualty Co. v. Farmers', etc., Co. (Tex. Civ. App.) 258 S. W. 584; American Surety Co. v. Blaine (Tex. Civ. App.) 272 S. W. 828; Id., 115 Tex. 147, 277 S. W. 619.

As the cross-bill was filed November 30, 1927, all interest that accrued on the money embezzled within four years prior to that date is, in our opinion, recoverable. The evidence justifies the following conclusions: That is, on November 30, 1923, Spangler's shortage amounted to $20.801.26; on January 23, 1924, $29,287.23; on July 7, 1924, $36,994.-17, and on April 1, 1925, $38,571.28; and thus it remained until Southwest Bank was succeeded by the North Texas Bank May 16, 1925. By computing interest, at 6 per cent. per annum, on these amounts for the periods indicated, we ascertain that Spangler was due Southwest Bank on May 16, 1925, interest, as damages on the money embezzled, the sum of $2,894.46. This was the bank's loss, on which Surety Company should be charged interest, eo nomine, at the rate of 6 per cent. per annum from May 16, 1924, to December 9, 1927, the date of judgment, to wit, $447.18, making a total of $3,341.64, for which judgment should have been rendered.

■■ The Surety Company also assigns error on the action of the court in admitting in evidence, over the objection that same was hearsay, the confession of Spangler. On September 2, 1925, Spangler was under suspicion, but before being actually discharged by plaintiff made a verbal confession, afterwards reduced to writing, in which he gave the origin and progress of his embezzlements, the method pursued of taking money deposited by one group of customers and passing same to the credits of customers of a preceding day, etc., as hereinbefore fully explained. When his probity was questioned, Spangler owed his employer the duty of a full and frank explanation of his conduct. The confession related to matters occurring during the period covered by the bond and within the twelve months thereafter for discovery; it followed immediately after his conduct was called in question, and was made to officials of plaintiff bank that had, under contract of succession, taken over the banking house and business of Southwest Bank. We think that under these circumstances the confession was admissible as res gestæ. Brite v. Atascosa County (Tex. Civ. App.) 247 S. W. 878; Farmers, etc., Co. v. U. S. Fidelity, etc., Co., 150 Minn. 126, 184 N. W. 792; Kent County v. Krakowski, 207 Mich. 631, 175 N. W. 427. But Spangler testified later by oral deposition to substantially the same facts, and at the examination appellant exercised the privilege of cross-examination. The deposition testimony was original evidence, unobjectionable in nature, and its admission rendered harmless the error, if any was committed, in admitting the confession.

■ The Surety Company also assigns error on the admission of the testimony of the expert witnesses, Massie and Keane, over its objection that same constituted unwarranted opinions and conclusions. These witnesses were experts in regard to the matters about which they testified; their testimony, and the report of the witness Keane, resulted from an exhaustive audit of the books of the banks, as they related to the defalcations of Spangler. Massie's audit covered the period of Spangler's services as teller with the plaintiff, while the audit and report of Keane covered the entire period of his services with the three banks.

Appellant offered no evidence on this issue and made no attempt to show that the audits or the reports were incorrect. As the facts were too voluminous to admit of a practical or satisfactory examination of the books and records in open court, the situation not only authorized but demanded this character of evidence to show what the books and voluminous records revealed in regard to the matters under investigation. Clopton v. Flowers (Tex. Civ. App.) 183 S. W. 68, and authorities cited; Cochran v. Hamblen (Tex. Civ. App.) 215 S. W. 374; Stark v. Burkitt, 103 Tex. 437, 129 S. W. 343; Esterman-Verkamp Co. v. Rouse, 211 Ky. 791, 278 S. W. 124.

We have carefully considered all assignments and propositions urged by appellants, including those not specifically discussed, as well as those mentioned, and, except as hereinbefore indicated, they are overruled. The judgment for North Texas National Bank against Royal Indemnity Company will be reformed, by reducing the interest allowance

to $5,249.88, which, added to the principal, $38,571.28, totals $43,821.16, and as reformed is affirmed; the judgment for North Texas National Bank against American Surety Company, and for Royal Indemnity Company against American Surety Company, are both reversed and here rendered for the Surety Company; the judgment for Southwest National Bank against American Surety Company for interest is reformed by reducing the recovery to the sum of $3,341.64, and as reformed is affirmed; in all other respects the judgment below is affirmed.

The costs of appeal in this and the court below will be taxed against and paid by North Texas National Bank, Southwest National Bank, and Royal Indemnity Company, one-third each.

Affirmed in part; reformed and affirmed in part; reversed and rendered in part.

### On Motion for Rehearing.

The able argument filed by counsel for Royal Indemnity Company, in support of its motion for rehearing, vigorously assails the correctness of our decision and the soundness of our reasoning. The pivotal question is, When did the loss occur for which recovery is sought? Appellant cites a number of authorities in support of the proposition that the relation of debtor and creditor, between plaintiff bank and these depositors, arose the moment the deposits were made, and that the entry, or the failure to enter, credits in their favor on the books of the bank, had nothing to do with that relationship.

We do not controvert the correctness of the proposition that, when these five customers deposited money with Spangler, each became the bank's creditor just as other depositors, but there was this difference, which in our opinion dates the loss at this time: The bank was compelled to discharge its liability to these depositors from resources other than general deposits, either from its capital or earnings. This was not true as to depositors who had been properly credited, and, presumably, were paid in due course of business, from general deposits. The bank sustained no actual loss by paying depositors from general deposits—in effect, that was but the paying back of money previously deposited—but when the bank was compelled, through Spangler's misconduct, to pay these depositors from resources other than deposits, an actual, as distinguished from a potential, loss was sustained.

Appellant insists that the loss occurred when Spangler appropriated or pocketed money belonging to the bank, and that his acts of concealment neither increased nor in any manner contributed thereto. The word "loss" has a variety of meanings, dependent upon the connection in which it is used. As used in this policy, we think the payment of money by plaintiff to the five depositors consti-

tuted and measured an actual loss, which theretofore was simply potential or threatened.

Under the terms of the policy in suit, the obligation of appellant to pay was not fixed by Spangler's dishonest or criminal acts; standing alone, these meant nothing; its obligation was fixed only by the resultant loss; therefore, when the cumulative effect of Spangler's misconduct compelled plaintiff to pay depositors from its resources other than deposits, an actual loss was sustained, and appellant's obligation to pay was thereby fixed. Stag Mining Co. v. Missouri, etc., Co. (Mo. App.) 209 S. W. 321, 323; Lowe v. Fidelity, etc., Co., 170 N. C. 445, 87 S. E. 250.

Appellant insists that State v. Atherton, 40 Mo. 210, is directly in point and supports its contention. We did not refer to this case in the original opinion, because the conditions of the bonds, there and here, are so dissimilar we did not believe the case was in point. The facts of that case, aside from the conditions of the bond involved, are as near identical with the facts of the instant case as is usually found, but the conditions of the bonds differ radically. In the Atherton Case the court held that the bond was for the integrity and faithful performance of duty by the bank teller, and that any act on his part in violation of these conditions amounted to a breach; in other words, the bond was breached when the teller defaulted. That was not true under the conditions of the bond in suit, for the reason that Spangler's criminal and dishonest acts, standing alone, neither breached the bond nor fixed appellant's obligation to pay.

It is also contended by appellant that Fidelity & Casualty Co. of New York v. Consolidated National Bank (C. C. A.) 71 F. 116, is also directly in point and supports its contention. The conditions of the bond that fixed the obligation to pay are in legal effect the same as the conditions of the bond under consideration, but the similarity of the cases ends at that point. The facts are not given; it is simply stated that the bank teller was guilty of fraud and dishonesty; that the Indemnity Company admitted liability for an embezzlement of $5,000, committed within twelve months next before the discovery; but recovery was also sought for previous embezzlements not discovered, because of the fraudulent conduct of an employee, within the twelve months' period. The court held that the loss was occasioned by the embezzlements of the employee and not by his fraudulent acts of concealment. It does not appear that any loss could have resulted from any act committed by the employee in an effort to conceal his crime; they simply obscured and prevented discovery. In the instant case, however, Spangler, by daily acts of dishonesty, not only prevented detection for years, but so circumstanced the case as

to postpone the maturity of the loss as well, with the result that it developed and fell on plaintiff when compelled to discharge its obligation to the five depositors in question. As we view these circumstances, the bank could only have sustained an actual loss by having to respond to its liability as debtor to these depositors.

Spangler's conduct, in juggling deposits, shifting money deposited by one customer to the credit of another, thus obscuring his crimes and postponing the maturity of the loss, was acting clearly within the scope of his authority as teller, and, although his conduct was fraudulent and for his own personal benefit, nevertheless the bank's liability to customers and its obligation to respond was fixed by and according to the method pursued by him. This view, that is, that the bank was bound by the events as ordered by Spangler, is sustained by the doctrine announced by the Supreme Court of United States in the recent case of Gleason v. Seaboard, etc., Co., 49 S. Ct. 161, 73 L. Ed. ——, to the effect that the liability of a principal for the conduct of an agent, acting within the scope of his authority, is unaffected by the agent's fraudulent motives or secret purposes.

If, however, we should be mistaken—if in fact plaintiff's loss occurred on May 16, 1925, when Spangler applied money deposited by customers of plaintiff bank to the credit of customers of Southwest Bank, of Saturday preceding—American Surety Company should, in our opinion, be held liable to plaintiff for the loss by virtue of the rider attached to its bond issued to Southwest Bank, continuing same in favor of plaintiff as beneficiary, from May 16, 1925, to July 7, 1925.

A careful re-examination has brought a clearer and better understanding of the case, also the discovery of certain expressions in the original opinion, apparently in conflict with our views expressed at this time; hence the original opinion will be altered to harmonize with the views here expressed.

After carefully considering all grounds urged by Indemnity Company for rehearing and finding no reason to change our decision, the motion is overruled.

On appellant's request, we file additional findings, as follows:

"That on July 6, 1925, Royal Indemnity Company executed its bankers' blanket bond to North Texas National Bank, agreeing to indemnify the bank from and against any loss through any dishonest or criminal acts of any of its officers, clerks, or other employees, which bond was in full force and effect on September 2, 1925. That the bond issued by the American Surety Company to Southwest National Bank was effective until July 6, 1925, and on the succession of North Texas Bank to Southwest Bank on May 16, 1925, the American Surety Company, by a rider attached to said bond, continued it in full force and effect in favor of North Texas Bank until July 6, 1925, at which date the bond of Royal Indemnity Company became effective. That Spangler's misappropriation of money and the dates thereof were as follows:

| | |
|---|---:|
| On or before July 7, 1920 | $ 1,087 63 |
| On or before August 14, 1922 | 778 22 |
| On or before September 20, 1922 | 7,964 60 |
| On or before March 10, 1923 | 4,430 36 |
| On or before July 9, 1923 | 6,540 45 |
| On or before January 23, 1924 | 8,485 97 |
| On or before July 7, 1924 | 7,706 94 |
| On or before July 7, 1925 | 1,577 11 |
| Total | $38,571 28 |

That the last money appropriated by Spangler—that is, by putting it in his pocket —was April 1, 1925.

American Surety Company of New York has also filed motion for rehearing, complaining of the judgment rendered against it in favor of Southwest Bank, for interest, in the sum of $3,341.64. After due consideration, this motion is also overruled.

Both motions for rehearing are overruled.